State of Connecticut *v.* Housatonic Railroad Co.

## STATE OF CONNECTICUT *vs.* THE HOUSATONIC RAILROAD COMPANY.

A statute provides for taxing railroads one per cent. upon a certain valuation of their franchise and property, with a provision that when only part of a railroad lies in this state the company owning such road shall pay one per cent. on such proportion of the valuation as the length of its road lying in this state bears to the entire length of the road. A corporation owning a railroad that ran from the southern line of this state to the Masachusetts line on the north, took a perpetual lease, upon a fixed rent, of two Massachusetts roads, one connecting at the state line with its own road, and the other with the latter at its northern terminus, and thereafter the two roads in Massachusetts were operated and maintained by the Connecticut corporation as if they were its own property and the three roads were one entire road. Held that the Connecticut corporation was not to be regarded as "owning" the Massachusetts roads within the meaning of the statute, and that it was not therefore entitled to a deduction from the valuation of its property on account of them.

ACTION by the State to recover a tax claimed to be due from the defendant company; brought to the Superior Court in Hartford County, and tried to the court upon a general denial, before *Hovey, J.* The court made a special finding of the facts.

The defendants were incorporated as a railroad company by the General Assembly of this state in the year 1836, and soon after, under the powers conferred by their charter, constructed and equipped a railroad from Bridgeport in this state to the Massachusetts state line, and ever since have possessed, maintained and operated the same.

On the 11th of January, 1843, the defendants made a contract with the Berkshire Railroad Company, a corporation created by the state of Massachusetts, the important parts of which are as follows:—

"Whereas the railroads of said companies, as constructed under their respective charters, form a junction with each other at the dividing line between Massachusetts and Connecticut, thereby forming one continuous line of railroad; and whereas it is necessary, in order to subserve the interests of said companies and of the public, that said roads should be operated by one of the said companies; and whereas the road

of said Berkshire Railroad Company is now, at a cost of two hundred and fifty thousand dollars, completed to the acceptance and satisfaction of said Housatonic Railroad Company, and is now and for some time past has been operated and used by said Housatonic Railroad Company:—Now in order to enable said Housatonic Railroad Company to use and operate said Berkshire railroad for all purposes necessary for the transportation of persons and freight upon and over said railroad, and so that the road of, said Berkshire Railroad Company and the road of the Housatonic Railroad Company may be operated together as one road, the said Berkshire Railroad Company hereby grants, leases and demises to said Housatonic Railroad Company the said Berkshire railroad; subject, however, to all such restrictions and liabilities as are or may be imposed upon the said Berkshire Railroad Company or its successors by the legislature of Massachusetts, and subject also to such other terms as are hereinafter recited; and the party of the second part shall or may possess, use and operate said Berkshire railroad, together with all the lands, property, rights, privileges, and franchises thereto appertaining and belonging, or that hereafter may appertain or belong to said' road, as fully and completely as the said party of the first part might or could do under its charter; to have and to hold the said railroad and all and singular the premises unto the said party of the second part, perpetually, for and during the full term of the continuance of the charter of the said party of the first part, and any renewals or extensions of the same, and as fully and freely, to all intents and purposes, as the said party of the first part might or could have, enjoy, use or operate the same under its charter. And furthermore, the said party of the first part shall, during the continuance of this lease, do all things in its power to maintain the organization of said Berkshire Railroad Company, choose all needful officers, keep all proper records, make all needful reports, hold all necessary meetings, pass such votes and do all such acts as may be necessary and proper in order to enable said party of the second part to carry into full effect the objects and intentions of this

indenture, and on reasonable demand give such other assurances as may be necessary therefor.

"And the said party of the second part hereby covenants with said party of the first part, that during the term in which the provisions of this indenture shall be in force, it will keep and maintain said Berkshire railroad and all the premises therewith connected or thereto appertaining and belonging, in good repair, and that said party of the second part shall be liable for and respond to said party of the first part for all damages, losses, costs and trouble that may in any way happen unto said party of the first part by means of any accidents, defaults, negligences or willful acts or omissions of the said Housatonic Railroad Company, or of any persons acting for said company.     *     *     And said party of the second part covenants with said party of the first part to pay to said party of the first part, as a rent or compensation for the premises, the sum of $1,458.33 on the first Tuesday of each month, during the continuance of this lease, and on failure of said party of the second part to pay said rents for the space of ten days after the same shall at any time become due, or on failure of said party of the second part to maintain said Berkshire railroad in good order and condition after reasonable notice of any disrepair or defect in said road, or of the premises or property therewith connected or thereto appertaining, or on failure, after due and reasonable notice, to pay to said party of the first part all damages that may happen as aforesaid, then this indenture shall terminate, and said party of the first part shall have a right to re-enter and re-possess itself of all and singular the premises."

In the year 1845 the defendants made another contract with the same railroad company, the part of which important to the present case is as follows:—

"Whereas authority has been given by the legislature of Massachusetts to said Berkshire Railroad Company to build a certain branch of said Berkshire road, which said Berkshire company agree that said Housatonic Railroad Company may be at the expense of building, and, when built, may operate

the same as a part of said Berkshire railroad, if said Housatonic Railroad Company shall so choose; and whereas, to effect the objects above indicated, and to enable the Housatonic Railroad Company to accomplish the same, the Berkshire Railroad Company, on October 13th, 1845, resolved that said company will increase its capital stock to an amount not exceeding $250,000 within the discretion of the officers of said company, to re-lay said Berkshire road with a heavy iron rail of the same pattern and weight with that used by the Housatonic Railroad Company in re-laying its road, to improve the depot houses and water stations on the road, to re-lay the West Stockbridge railroad with iron similar to that to be used on the Berkshire railroad, and to build a branch to the Stockbridge Iron Works, if deemed by the directors advisable, with the assent of the Housatonic Railroad Company:—Now, therefore, it is hereby agreed by and between said Housatonic Railroad Company and said Berkshire Railroad Company, that said Berkshire Railroad Company will issue and deliver to the treasurer of the Housatonic Railroad Company the whole of said increased capital stock of said company, or so much thereof as said Housatonic Railroad Company shall choose to demand at any time when its treasurer shall make application in writing therefor. And said Housatonic Railroad Company hereby covenants and agrees, out of the avails of said stock, to re-lay the whole track of said Berkshire railroad with a heavy iron rail of the same pattern and weight with that to be used by the Housatonic Railroad Company in re-laying its road, to improve the depot houses and water stations on said Berkshire road; and also, if said Housatonic Railroad Company shall deem it expedient, re-lay, as aforesaid, said West Stockbridge railroad, and build said branch road. And all the enterprises and works aforesaid shall be at the sole risk and expense of said Housatonic Railroad Company. And said Housatonic Railroad Company further covenants and agrees to pay to said Berkshire Railroad Company, perpetually, during the continuance of the said agreement of January 11th, 1843, hereinbefore referred to, seven dollars per share per annum (said shares

State of Connecticut *v.* Housatonic Railroad Co.

being $100 each) on all shares of said capital stock of said Berkshire Railroad Company which shall be issued and delivered to said Housatonic Railroad Company as aforesaid, which said seven dollars per share per annum shall be payable in monthly installments from the date of its issue, and shall be taken and considered as additional rent for the use of said Berkshire railroad, to be added to the rent stipulated for in the articles of agreement hereinbefore referred to, and to be subject to all the stipulations and conditions referred to and provided in said original agreement, regarding right of re-entry for failure of payment, and other matters therein stated, and to be treated in every respect as if the amount of rent stipulated· in said original agreement were increased by the addition of the sum herein stipulated to be paid."

The defendants in 1847 made a further contract with the same railroad company by which it was agreed that one hundred thousand dollars, increased capital of the Berkshire Railroad Company, should be transferred to the defendants, and that with the avails of this stock they should purchase new engines and cars, which should be the property of the Berkshire Railroad Company, but should be leased to the defendants for a rent of seven per cent. on the amount, during the continuance of the perpetual lease of January 11th, 1843.

. In 1850 the defendants made a contract with the Stockbridge & Pittsfield Railroad Company, a Massachusetts corporation, the parts of which important to the present case are as follows:—

"Whereas a railroad has been constructed by the Stockbridge & Pittsfield Railroad Company under their charter from a point in the line of the Western railroad near the village of Pittsfield to a point in the line of the Berkshire railroad in the town of Great Barrington; and whereas the said Housatonic Railroad Company now control, operate and manage the said Berkshire railroad under a contract of transportation entered into with said Berkshire Railroad Company, and it is for the interest of said Housatonic Railroad Company to operate and use the said Stockbridge & Pittsfield railroad in connection with their own, so as to make a con-

tinuous line of railroad communication from Pittsfield to Bridgeport; and whereas the said Stockbridge & Pittsfield railroad is now completed at a cost of $438,600 to the acceptance and satisfaction of said Housatonic Railroad Company, and since the first day of January, 1850, has been operated and used by said Housatonic Railroad Company:—Now, in order to enable said Housatonic Company to use and operate said Stockbridge & Pittsfield railroad for all purposes necessary for the transportation of persons and freight upon and over said railroad, and so that the Stockbridge & Pittsfield railroad and the road of said Housatonic Company may be operated together as one road, the said Stockbridge & Pittsfield Railroad Company hereby grant, lease and demise to said Housatonic Railroad Company the said Stockbridge & Pittsfield railroad, subject however to all such restrictions and liabilities as are or may be imposed upon the said Stockbridge & Pittsfield Railroad Company by the legislature of Massachusetts, or by the legal authorities of the state of Massachusetts, and subject also to such other terms and conditions as are herein recited; and the said Housatonic Railroad Company shall and may possess, use and operate said Stockbridge & Pittsfield railroad, together with all the lands, property, buildings, rights, privileges and franchises thereto appertaining and belonging, or that hereafter may appertain or belong to said road, as fully and completely as the said party of the first part might or could do under its charter. To have and to hold the said railroad and all and singular the premises unto the said party of the second part, perpetually, from the first day of January, 1850, for and during the full term of the continuance of the charter of the said party of the first part, and any renewals or extensions of the same, and as fully and freely to all intents and purposes as the said party of the first part might or could have, enjoy, use or operate the same under its charter.     *     *     And furthermore said party of the second part covenants with said party of the first part to pay to said party of the first part, as a rent or compensation for the premises under this contract, the sum of seven per cent. per annum on the cost

of said Stockbridge & Pittsfield railroad, that is to say, the sum of $30,702 annually, from the first of January last past. * * And on failure of said party of the second part to pay said rent or compensation for the space of ten days after it shall have become due and has been demanded, or on failure to maintain said Stockbridge & Pittsfield railroad in good repair and the premises and buildings appurtenant in good order and condition after reasonable notice of any disrepair or defect in said road or of the premises or property therewith connected, or on failure after due and reasonable notice to pay to said party of the first part all damage that may happen on said road as aforesaid, then this indenture, if the party of the first part shall so elect, shall be terminated; and the said party of the first part shall have the right to re-enter and possess itself of all and singular the premises above mentioned."

The Berkshire Railroad was connected with the railroad of the defendants at the terminus of the latter road at the Massachusetts line, and the Stockbridge & Pittsfield Railroad was a continuation of the same line, connecting with the Berkshire road at Stockbridge in Massachusetts.

The defendants have had possession of these roads since the execution of the foregoing contracts, and have operated and maintained them as if they were their own and in common with their own, no discrimination being made on their books between expenditures on or receipts from the different roads. Since they took possession they have made permanent improvements upon the roads, by purchasing lands for new depot buildings and side-tracks, and constructing such buildings and side-tracks thereon, by re-building all the trestle work and bridges, laying new ties and new rails on both roads, and by making and maintaining fences on their sides. As no separate account of these improvements was kept, it is impossible to state with accuracy their cost, but they are found on the estimates of the defendants' witnesses to have been about $500,000. A portion of the funded and floating debt of the defendants was incurred for the purpose of paying for these improvements. The whole amount expended by

the defendants for construction and permanent improvements, including the amount expended for improvements of the Massachusetts roads, is $3,163,498.56. The receipts from the Massachusetts roads are about sixty per cent. of the total receipts of the three roads. About one-half of the money expended by the defendants upon the three roads for repairs has been expended upon the roads in Massachusetts.

The capital stock of the Berkshire Railroad Company is $600,000; that of the Stockbridge & Pittsfield Railroad Company is $448,700; amounting in the whole to $1,048,700. This stock is taxable and taxed in Massachusetts at one per cent. of its market value, and the tax is paid by the Massachusetts corporations against which the tax is laid.

The length of the Housatonic Road in Connecticut is seventy-four miles, and of the two Massachusetts roads in Massachusetts fifty miles.

On the 20th of October, 1877, the defendants paid to the treasurer of this state for taxes due from them on that day, the sum of $9,931.81, and refused and ever since have refused to make any further payment on account of such taxes.

Upon the above facts the State claimed judgment for the sum of $6,858.33, being the balance of one per cent. on the valuation of the stock and bonds of the Housatonic Railroad Company as set forth in their statement, (less the amount of taxes paid on real estate owned by the company and not used for railroad purposes,) with interest thereon from the 20th of October, 1877. The defendants claimed exemption from the payment of any further tax for the year 1877, on the ground that their interest in the roads in Massachusetts was such that, by a proper construction of the statutes of this state, they were entitled to a deduction of such part of the stock and debt of the road as the number of miles of road in Massachusetts bore to the whole number of miles of road in both states.

The court sustained the claim of the State and overruled that of the defendants; and thereupon rendered judgment in favor of the State for the sum of $7,748.77 damages and costs of suit. The defendants brought the record before this court by a motion in error.

*C. E. Perkins*, for the plaintiffs in error.

*R. D. Hubbard*, for the defendant in error.

PARK, C. J.   This action is based upon the following section of the statute with regard to taxation:—

"*Sec.* 5.   The secretary or treasurer of every railroad company, any portion of whose road is in this state, shall, within the first ten days of October, annually, deliver to the comptroller a sworn statement of the number of shares of its stock, and the market value of each share, the amount and market value of its funded and floating debt, the amount of bonds issued by any town or city of the description mentioned in the twelfth section of chapter first of this title, when the avails of such bonds or stock subscribed and paid for therewith shall have been expended in such construction, the amount of cash on hand on the first day of said month, the whole length of its road, and the length of those portions thereof lying without this state.

"*Sec.* 6.   Each of such railroad companies shall, on or before the twentieth day of October, annually, pay to the state one per cent. of the valuation of said stock and funded and floating debt and bonds as contained in said statement, after deducting from such valuation the amount of cash on hand, and from said sum required to be paid the amount paid for taxes upon the real estate owned by it and not used for railroad purposes; and the valuation so made, and corrected by the board of equalization, shall be the measure of value of such railroad, its rights, franchises and property in this. state for purposes of taxation; and this sum shall be in lieu of all other taxes on its franchises, funded and floating debt, and railroad property in this state."

The defendants claim the exemption from taxation under this statute of the amount in controversy in this suit, under the following act passed in 1876:—"When only part of a railroad lies in this state, the company owning such road shall pay one per cent. on such proportion of the above named valuation as the length of its road lying in this state bears to the entire length of said road."

We agree with the counsel for the defendants, that these statutes seek to ascertain the value of the property of railroad companies, lying within this state, devoted to railroad purposes, and to tax that value. This was so held in the case of *Nichols* v. *The New Haven & Northampton Company*, 42 Conn., 103, and is clearly correct. These statutes proceed upon the idea that the market value of the stock of railroad companies, with their funded and floating debt, and the amount of certain bonds described, the proceeds of which have been expended in the construction of the roads after making certain deductions from the entire amount, fairly represent the value of the property of railroad companies used for railroad purposes, and therefore they take that amount as the basis of taxation. It is manifest that the debts of a company must be considered in ascertaining the value of its capital stock, for such debts must be paid out of the property of the company, and the capital stock takes its value from what remains of the property after the payment of such debts. Thus, if a company has capital stock to the amount of $1,000,000, and is indebted to the same amount, and has property of the value of only $1,000,000, the stock of the company would be worthless, for its debts would require the entire property of the company to pay them. But if the stock of a company with such a capital should be found to be worth fifty cents on the dollar, then the property of the company must be worth $1,500,000, for in that case $500,000 worth of property would remain after the debts had been paid, and this would be applied on the capital stock, and would be sufficient to pay it to the extent of one-half, or fifty cents on each dollar of the stock. Hence the true value of the stock of a company, with the amount of the debts of the company, must represent the value of its property.

The statutes in question, for purposes of taxation, take the market value of the stock of railroad companies as its true value. This is done for purposes of convenience. Ordinarily the market value of such stock differs but little from its real value, and there is no convenient mode by which a more accurate valuation of the stock could be made.

We come now to the consideration of the claim of the defendants. They insist that their case comes within the provision of the act of 1876. This act, as we have seen, provides that "where only a part of a railroad lies in this state, the company owning such road shall pay one per cent. on such proportion of the above named valuation as the length of its road lying in this state bears to the entire length of said road."

Suppose that when the defendants made their contracts with the Massachusetts corporations for the use of their roads, those roads had not been made, and the defendants had constructed them under a charter from that state authorizing them to do it, and had expended in such construction an amount equal to what the Massachusetts corporations have expended, then there would have been added to the defendants' present valuation under the sixth section of the statute, more than one million of dollars, which would have made their proportional taxation by the state more than the state now claims.

Again, suppose that when the defendants made their contracts they had purchased these roads of the Massachusetts corporations, if a purchase could lawfully have been made, and had paid them an amount equal to what the sum they yearly pay for the use of those roads capitalized at the rate of six per cent. would amount to; that sum, with the five hundred thousand dollars they have expended in improvements along the line of those roads, would again make more than one million of dollars in addition to the present valuation of the defendants' property under the sixth section of the statute; and this again would make their proportional tax larger than the amount the state now claims.

But if it be claimed by the defendants that the five hundred thousand dollars has gone into the valuation by the increased value of their stock and by the increase of their floating debt, still the eight hundred thousand dollars has not gone into the valuation, and that sum in addition to their present valuation would make their proportional tax nearly as large as the amount the state now claims.

Again, suppose the defendants should sell their interest in those roads back to the Massachusetts corporations, what would they receive on such sale? If the sum they yearly pay for the use of those roads is nothing more nor less than a fair compensation for such use, they would receive on such sale nothing more than compensation for the improvements they have made along the line of those roads, that is, the sum of five hundred thousand dollars, for they would have nothing else that was valuable to convey to them.

How then can the defendants claim to own those roads within the meaning of the statute? To own them within its meaning would be to own them as they own their road within this state. The statute proceeds upon the idea that the value of that portion of a road out of the state and that of its rolling stock will, in some form, enter into and enhance the valuation of the property of the company under the sixth section of the statute. The statute means simply to tax all the property of a railroad company which lies within this state and is devoted to railroad purposes. Where the road lies wholly within this state there is of course no difficulty. But here is a road which lies partly within and partly without the state. It is all under one management. The company's stock covers the whole road. Its funded and floating debt covers the whole. How shall its property lying within this state be taxed? Shall it be separately appraised item by item? That would not be practicable, or at least would involve great trouble and expense. The statute has conceived the way it can be conveniently done without trouble or expense. It takes the whole market value of the stock, and the whole funded and floating indebtedness of the company, and says that this amount shall be taken to be the whole value of the property of the company devoted to railroad purposes both in and out of the state. It then deducts from the whole amount the market value of the property which lies out of the state. This is done in this way. The amount of property lying in each state is regarded by the statute as being in proportion to the length of the road in each state. The property is so divided, and the property lying out of the

state is deducted from the whole amount of the property of the company as previously ascertained in the mode prescribed by the statute. Thus the amount of the property lying in the state is satisfactorily ascertained. No property lying within the state devoted to railroad purposes is intended to be exempted from taxation. It is simply an ingenious mode of ascertaining the amount of the property to be taxed. The property lying out of the state is first included in the valuation, because the computation cannot otherwise be made, and then it is deducted. No more is intended to be thus deducted than was thus first included. It is a mere process in mathematics.

The difficulty with the defendants' claim is that it adds but little and subtracts a great deal. The company has but little property out of the state to be added, but they propose to subtract the entire value of both roads out of the state. But what has entered into the amount of the final valuation from those roads in Massachusetts? Nothing whatever but a portion of the floating debt of the defendants, to what extent does not appear, and some increased value of the preferred stock of the company, to what extent likewise does not appear. The defendants claim that at least one-half the value of their stock grows out of their interest in those roads. If this was true, the valuation of their property under the sixth section of the statute would fall far below what it would have been if the cost or value of those roads had gone into the valuation to enhance the amount. The entire stock of the defendants is worth but a little over one million of dollars; consequently but half that sum would be represented in the valuation, growing out of the defendants' interest in those roads. But they are paying for the use of those roads the sum of forty-eight thousand dollars annually. They are therefore paying interest at six per cent. on a capital of eight hundred thousand dollars, which must be very nearly the value of those roads when they came into their hands. But this is not all. The defendants have expended five hundred thousand dollars in improvements along the line of those roads. These two sums together make thirteen

hundred thousand dollars, which leaves the sum of eight hundred thousand dollars unrepresented in the valuation under the sixth section of the statute.

But is it true that the defendants' stock receives one-half its value from their interest in those roads? No doubt the value of the stock is enhanced by such interest, inasmuch as the cost of the improvements made by the defendants upon those roads was paid in part by their ready money, and to that extent, if the value of the improvements were worth the expenditure, the value of the stock must be increased.

Again, the defendants claim that the value of their stock is greatly increased, from the fact that their road and the Massachusetts roads, taken together, make a trunk line from points on the Boston & Albany railroad to Long Island Sound, and that sixty per cent. of their income grows out of their connection with those roads. But without doubt they would have had a connection with those roads if they had had no interest in them, for the interest of all the roads would have required such a connection. About all the difference seems to be, that the roads are now bound together by a perpetual contract, while without a contract they would have been bound together by their common interest. But the defendants' stock is probably somewhat enhanced in value by their permanent connection with those roads. It does not appear to what extent, but it cannot be to a very great one.

So far as the defendants' stock has been increased in value by their interest in the Massachusetts roads, and so far as their floating debt has been increased by the making of permanent improvements along these roads, they ought to have the benefit of these facts in a proportional reduction of their tax; and no doubt, if the matter was brought to the attention of the legislature, a proper reduction would be made. But the courts have no power to do equity in the matter.

The conclusion then is, that the defendants do not own the Massachusetts roads within the meaning of the statute of 1876, whatever their interest in them may be called.

There is no error in the judgment below.

In this opinion the other judges concurred.