# THE STATE OF CONNECTICUT vs. THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The statute with regard to the taxation of railroads, in force in the years 1880 to 1885, provided that the secretary or treasurer of every railroad company should, within the first ten days of January in each year, deliver to the comptroller a sworn statement of the number of shares of its stock and the market value, with sundry other items showing the condition of the company, and among them "the amount of cash on hand on the first day of said month;" and that the railroad company, on or before the 20th of January, should pay to the state one per cent upon the valuation of the property specified, after deducting from it,

among other things, the amount of cash on hand; and that this valuation, corrected by the board of equalization, should be "the measure of value of such railroad, its rights, franchises and property in this state, for purposes of taxation." A later section provided that the board of equalization should examine all statements returned to the comptroller, and that, if any were found incorrect, they should, within ten days after the time limited for making the same, make out, upon the best information they could obtain, the statements required, and leave a copy of the same with the company, and that the valuation of the several items contained in them should be final. The defendant railroad company had, during the years mentioned, made sworn returns as required, and had deducted from the valuation of the items specified a certain sum as "cash on hand." The board of equalization had approved one of the statements and had made corrections in all the others, but had made no change in the item of "cash on hand," and did not know that anything but strictly cash funds was included in the item. The state, claiming that the amount deducted as cash was much larger each year than the actual amount, brought a suit to recover the amount of taxes which the company had thus failed to pay. Held that, the board of equalization having acted upon the statements returned, its action was final as to all the items contained in them, and among them as to the item of "cash on hand."

The board having undertaken to act on the several statements, must be presumed to have done its entire duty, and, having acted upon some of the items, to have considered them all.

The provision of the statute that the board is to act upon the best information it can obtain, intends only such information as it can obtain in the limited time allowed and with its restricted powers.

By "cash on hand" in the statute is intended ready money, or that which in ordinary business usage is the same thing, as bank notes, checks, drafts, bills of exchange, certificates of deposit, and other like instruments which pass with or without endorsement from hand to hand as money or are immediately convertible into money.

An action by the state for the collection of taxes must be regarded as warranted by usage, if not authorized by the statute.

The tax on railroads running into other states is not unconstitutional as operating upon commerce between the states, but is wholly a tax on property, as property, located and used in this state.

The valuation of the property of the railroad company for the purpose of taxation, constitutes an "assessment" of the property, as that term is used in our statutes.

Evidence held inadmissible on the part of the railroad company that a former board of equalization had considered and approved the item of "cash on hand" made up in part of sundry securities now included in that item.

Correcting errors of mere computation never impairs the effect of a judgment.

[Argued November 19th, 1890—decided April 20th, 1891.]

ACTION by the state to recover an amount claimed to be due from the defendant railroad company as unpaid taxes; brought to the Superior Court in Hartford County, and reserved, on facts found, for the advice of this court. The case is sufficiently stated in the opinion.

*A. P. Hyde* and *C. E. Gross*, for the plaintiff.

1. The law under which these taxes were laid does not violate the provision of the U. States constitution with regard to the regulation of commerce between the states. *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. R., 345; *Western Union Tel. Co.* v. *Massachusetts,* 125 id., 553; *Ratterman* v. *Western Union Tel Co.,* 127 id., 411; *Western Union Tel. Co.* v. *Alabama,* 132 id., 472; *McCall* v. *California,* 136 id., 104; *Nichols* v. *New Haven & Northampton Co.,* 42 Conn., 103, 122, 137. Nor does it violate the constitution by depriving the defendant of its property without due process of law. *State Railroad Tax Cases,* 92 U. S. R., 575, 604; *McMillen* v. *Anderson,* 95 id., 37; *Kentucky Railroad Tax Cases,* 115 id., 321, 339; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 id., 237; *Home Ins. Co.* v. *New York,* id., 594.

2. The right of the state to recover is not barred by the acceptance of the returns made by the company to the comptroller, by the board of equalization. The board never passed upon the item of "cash on hand" in the several returns. It is found that they did not know that anything but what was strictly cash or available as cash had gone into that item. Even a final judgment obtained by fraud of the opposite party or by accident or mistake, may be set aside and disregarded. *Pearce* v. *Olney,* 20 Conn., 544; *Dobson* v. *Pearce,* 12 N. York, 156; *Cole* v. *Cunningham,* 133 U. S. R., 107. Our own court has held such an acceptance not to be final in a similar case. *Coite* v. *Conn. Mut. Life Ins. Co.,* 36 Conn., 512. Besides this, the act of 1870, (now section 3942 of Gen. Statutes,) provided expressly that no action by the state to recover taxes from corporations should be defeated by reason of the board of equalization having "failed to perform" the duties required of them in such a case.

3. The main question of fact, and we deem it the only important question in the case, is, were the returns of the amount of cash on hand, in the several years embraced in this action, true or erroneous? The question is one solely for the court upon the construction of the law in this particular. What then was meant by the legislature in requiring the sworn statement of the amount of "cash on hand." This can be determined, so far as we can see, only from the language used, which by statute is to "be construed according to the commonly approved usage." Cash, as defined by Webster, means, primarily, "ready money; money in chest, or in hand; in bank, or at hand." By Bouvier cash is defined as "that which circulates as money, including bank bills, but not mere bills receivable." The expression in the statute is "cash on hand." This clearly means money, or its equivalent, that is immediately applicable to use by the railroad company in payment of debts or otherwise. It cannot embrace investments in stocks or bonds, or other property which may be sold for cash, or debts and loans which may be collected, however good such debts or loans may be considered to be. It must be money immediately applicable for use in payment of indebtedness. No other construction can be given to the expression that will make sense. "The use of the phrase 'actual cash payment' is emphatic and significant. It is wisely intended to exclude a construction by which *commercial securities*, of any description short of cash, may be regarded, by the aid of mercantile usage or otherwise, as substantially equivalent to cash." *Haggerty* v. *Foster*, 103 Mass., 19. If the construction which we claim is to be given to the term "cash on hand," then it is not denied that the amount stated as cash and deducted as such was several millions of dollars larger than the cash assets which the company actually possessed at the times when the several returns were made to the comptroller.

*H. C. Robinson* and *G. D. Watrous*, for the defendant.

ANDREWS, C. J. This is an action brought by the state

to recover certain arrears of taxes claimed to be due from the defendant for the years 1880 to 1885, both inclusive. The questions are reserved for the advice of this court.

This state has for many years practiced a special method of imposing taxes on railroads, and on some other classes of corporations, differing widely from the general method of taxation on other kinds of property. The statutes that were in force during the years above named respecting the taxation of railroads were sections five, six and seven of title 12, chapter 5, of the revision of 1875, as amended by chapters sixty and eighty-one of the acts of 1876, and sections eleven, twelve and twenty-one of the same title and chapter of that revision. These sections, with the amendments referred to incorporated, are as follows:—

"Sect. 5. The secretary or treasurer of every railroad company, any portion of whose road is in this state, shall, within the first ten days of January, annually, deliver to the comptroller a sworn statement of the number of shares of its stock and the market value of each share, the amount and market value of its funded and floating debt, the amount of bonds issued by any town or city of the description mentioned in the twelfth section of chapter first of this title, when the avails of such bonds, or the stock subscribed and paid for therewith, shall have been expended in such construction, the amount of cash on hand on the first day of said month, the whole length of its road and the length of those portions thereof lying without this state, and also the number, name and length of each of its branches lying in this state.

"Sec. 6. Each of said railroad companies shall, on or before the twentieth day of January, annually, pay to the state one per cent of the valuation of its stock, funded and floating debt and bonds as contained in said statement, after deducting from such valuation the amount of cash on hand, and, from said sum required to be paid, the amount paid for taxes upon the real estate owned by it and not used for railroad purposes; and the valuation so made and corrected by the board of equalization, shall be the measure of value

of such railroad, its rights, franchises and property in this state for purposes of taxation; and this sum shall be in lieu of all other taxes on its franchises, funded and floating debt, and railroad property in this state.

"Sect. 7. When only a part of a railroad lies in this state, the company owning such road shall pay one per cent on such proportion of the above named valuation as the length of its road lying in this state bears to the entire length of said road. But in fixing the aforesaid valuation and length, neither the value nor length of any branch thereof in this state which the board of equalization shall determine to be of less value per mile than one fourth of the average value per mile of the trunk road, shall be included; but every such branch shall be estimated at its true and just value by the board of equalization, and such railroad company shall pay to the treasurer of this state one per cent on such value, at the time fixed for the payment of other railroad taxes; and when any such sum becomes due, and such company shall not then have the management and control of its road, or the road bearing its name, the person or corporation then owning or managing such railroad shall pay such sum to the state within the time above prescribed."

"Sect. 11. The board of equalization shall examine and correct all statements returned to the comptroller as required by either of the nine preceding sections; and if any person shall not make such return as prescribed, or shall make erronous returns, said board shall, within ten days after the time limited for making the same, make out, upon the best information which they can obtain, the statement required to be made and returned by such person; and a true copy of each statement as corrected or made out by said board shall be returned to each cashier, treasurer, secretary, superintendent or manager; and the valuation of the several items of money, estate, amount and number, contained in such statement shall be final, and the sums required shall be paid according to it.

"Sect. 12. Every person who shall fail to return to the comptroller as prescribed in any of the preceding sections

of this chapter, any statement required to be returned, shall forfeit five hundred dollars to the state; and every person or corporation required by any section of this chapter to make any payment to the state, who shall fail to make it within the time therein limited, shall forfeit to the state twice the amount required for such payment."

"Sect. 21. No action commenced by the state against any person or corporation for the recovery of any sum in the nature of a tax, which he or it is required to pay by the provisions of this chapter, or for the recovery of the penalty for the non-payment thereof, shall be barred or defeated by reason of the omission or failure of the board of equalization to perform the duties required of them by this chapter."

In each of the years above named the treasurer of the defendant made out and delivered to the comptroller, within the first ten days of January, a sworn statement purporting and intended to be a true statement of the affairs of that company on the first day of the month, for the purpose of taxation and as required by law. In the year 1880 the board of equalization approved the statement so made by the defendant's treasurer, and the taxes for that year were afterwards paid by the defendant to the state, based on the statement so made and approved. In the year 1881 the board corrected the statement made by the treasurer by increasing the valuation placed upon the shares of the capital stock by him. The board made no other change. A true copy of the statement as thus corrected was returned by the board to the treasurer of the company. The taxes for that year were afterwards paid by the defendant to the state, based upon the corrected statement. In the years 1882, 1883, 1884 and 1885, the board corrected the statements sent to them by the defendant's treasurer, by increasing the valuation of the shares of the capital stock, but made no other change; and each year returned to the treasurer a copy of the statement so corrected by them; and each year the taxes were paid based upon such corrected statement.

It is claimed by the state that each year the amount of "cash on hand" was very much less than the sum mentioned

in the statements, so that in each of said years the defendant paid less taxes to the state than the state intended it should pay, and much less than it ought to have paid; amounting in all, with interest, according to the computation of counsel, to more than $125,000.

No claim is made that said statements were erroneous in any other respect.

We assent to the argument made by the counsel for the state, that the words "cash on hand," as used in said sixth section, intended ready money, or that which in ordinary business usage is the same thing. Bank notes, checks, drafts, bills of exchange, certificates of deposit, or other like instruments which pass with or without indorsement from hand to hand as money, or are immediately convertible into money, fall properly enough within the words "cash on hand." But there is no elasticity of speech to which the words of the statute can be subjected that will permit many of the things included by the defendant in its item of cash on hand to be regarded as cash. Loans to other railroads on long time, stock of other companies not intended to be sold, and other investments of like kind, are clearly not cash on hand. Cash on hand means money at hand ready to be used, actual cash or its equivalent, and actually on hand. The intent of the statute in this respect is now put beyond controversy by an amendment made in 1887.

The language now is—"The amount of money actually on hand in cash in the treasury or in the possession of the proper officers or agents of the company." This amendment does not change the meaning. It serves only to make misinterpretation impossible. The amount of the sums so improperly included in the item of cash on hand we have not found it necessary to compute.

None of the sections above quoted,—nor does any other section of the statutes—provide a means for the collection of the taxes so required to be paid. No levy, or execution, or other process in the nature of a distress, is authorized, nor is there any proceeding specified by which an unwilling corporation can be coerced to make payment. A statute

passed in 1881, now section 3901 of the General Statutes,
while providing that any city, town, district or community
in whose favor taxes are assessed, may recover the same by
any proper complaint or proceeding at law, does not men-
tion the state as being entitled to the same means to recover
taxes assessed in its favor. Such actions have, however,
been repeatedly brought in the name of the state and judg-
ments therein rendered. And as the twenty-first section
speaks of actions by the state for the collection of taxes due
to itself, such an action as the present one must be regarded
as warranted by usage, if not clearly allowed by the very
words of the statute. *Coite* v. *Society for Savings*, 32 Conn.,
173; *Coite* v. *Conn. Mut. Life Ins. Co.*, 36 id., 512; *Nichols*
v. *New Haven & Northampton Co.*, 42 Conn., 103; *State of
Connecticut* v. *Housatonic R. R. Co.*, 48 Conn., 44.

At the outset of the inquiry it is objected that the taxes
here sought to be recovered are invalid for the reason that
the method of taxation imposed on the defendant violates
article 1, section 8, of the federal constitution, which pro-
vides that " the congress shall have power to regulate com-
merce among the several states." A tax so laid as to operate
directly upon commerce between this and another state
would undoubtedly be void; as for instance a tax laid di-
rectly upon an agency or an instrument of such commerce,
or a license for carrying it on, or as a condition to its prog-
ress. The tax here imposed is not such an one. It is a
tax upon property, as property, located and used in this
state. *Nichols* v. *New Haven & Northampton Co.*, 42 Conn.,
104; *State of Connecticut* v. *Housatonic R. R. Co.*, 48 id.,
44. Such a tax is not forbidden by the clause of the con-
stitution above cited. *Western Union Telegraph Co.* v.
*Massachusetts*, 125 U. S. R., 530; *Thomson* v. *Pacific R.
R. Co.*, 9 Wall., 579; *National Bank* v. *Commonwealth*, id.,
353.

The statutes of this state now in question do not provide
any means by which the tax therein imposed can be collected.
Any unwilling corporation can contest the whole tax, as to
its validity or amount, or any part of it, in a suit just as the

defendant is doing in this suit. There is no way other than by a suit like the present one in which the collection of any tax imposed by these statutes can be compelled; and in such a suit any defendant may call into question the amount or the validity of the tax, as a whole or as to any part of it. The valuation of railroad property under these statutes and the assessment of taxes thereon is not final, in the sense that it constitutes a charge upon the property subjected to the tax or a liability fixed on the corporation owning it. That result can be attained and the tax actually collected only by a suit. Another objection is, that " the taxes sought to be recovered have never been assessed, and without assessment there can be no collection of taxes." The word "assessment," when used in connection with taxation, may have more than one meaning. The ultimate purpose of an assessment in such a connection is to ascertain the amount that each tax-payer is to pay. Sometimes this amount is called an assessment. More commonly the word "assessment" means the official valuation of a tax-payer's property for the purpose of taxation. If the latter is the sense in which the word is used in the objection it is fully answered in the finding. It clearly appears that the property of the defendant has been each year valued for the purpose of taxation. In the year 1880 the board approved the valuation of the defendant's treasurer, and so made that the official valuation. Each of the other years the board fixed the value themselves. The valuation so made included all the property of the defendant as represented in its capital stock, from which certain deductions were made before the basis was reached upon which the rate per cent of taxation was to be computed. It is argued in this connection that if there has been an assessment there has been a judicial determination of the amount of tax which it was the duty of the defendant to pay, and which cannot be revised or changed in this proceeding. The entire process of determining what sum the defendant ought to pay to the state in taxes in any year consists of several parts. The valuing of its entire capital stock is one part. But the whole value is not to be

taxed; only that part which bears a ratio to the whole equal to the ratio which the length of the defendant's railroad in this state bears to the entire length of its road. Then certain sums are to be subtracted and the computation of the percentage is to be made on what is left. If it be granted that the act of an assessor in ascertaining what property is subject to be taxed and in fixing its value for taxation is judicial in its nature, it is clear that calculating ratios or making subtractions are not judicial acts. Among other deductions to be made in fixing the amount of the defendant's tax is the amount paid for taxes on real estate not used for railroad purposes. Would it be claimed for a moment that subtracting such amount is a judicial act? So too subtracting the amount of cash on hand would not be a judicial act. If in respect to either of these sums there has been a mistake, we think either might be corrected without affecting any judicial act done by the board of equalization. Changing mere computation never impairs the effect of a judgment or decree; such for instance as correcting the computation of interest, or making additions or subtractions. The theory of the state in this part of the case is, that too great a deduction was made from the entire value of the defendant's capital stock for cash on hand, and that deducting a less amount would not affect the judicial character of the assessment.

We think the evidence of past members of the board of equalization was correctly admitted. The board was required to act " upon the best information which they could obtain." What that " best information " was could be shown by a process of exclusion, perhaps, better than in any other way. We also think the evidence of Mr. Yeamans was properly rejected. The action of one board would not be binding on a subsequent one; and in this case it is not pretended that the action of the former board had been made known to the one in question.

We come now to the last objection made by the defendant which we shall have occasion to examine. It is " that the action of the board of equalization in approving without

amendment the list for 1880, and correcting the lists for other years, is final and conclusive upon all parties."

The duties required by the board of equalization are contained in the eleventh section cited above. An analysis of that section shows that these duties are—(1) to examine and correct all statements returned to the comptroller; in case no statement, or an erroneous one, is made, then, (2) within ten days next after the time limited, to make out upon the best information which they can obtain the statement required to be made; and (3) to return to the treasurer, or other officer, a true copy of the statement so corrected or made out. The section then concludes:—" And the valuation of the several items of money, estate, amount and number contained in such statement, shall be final, and the sums required shall be paid according to it." That is, that the statement made out or corrected by the board of equalization,—a copy of which is returned to the tax paying corporation,—is final, and the taxes must be paid according to it. If then there has been a decision by the board of equalization in any or all the years involved in this suit as to the amount of cash on hand, such decision is by the terms of the statute, as well as by the opinion of this court in *Coite* v. *Conn. Mut. Life Ins. Co.*, 36 Conn., 535, final and conclusive, and the taxes having been paid according to such decision no more can be recovered.

In each of the years involved in this suit the board took action upon the statement sent by the defendant's treasurer to the comptroller. In 1880 they approved the statement so sent without change. In each of the other years they made out a statement,—a copy of which they returned to the defendant's treasurer—which they declared over their own signatures to be a true statement of the affairs of the defendant corporation for the purposes of taxation as required by law, as amended and corrected, or made out by themselves. Each of these statements contained the item of "cash on hand." Apparently the board of equalization did each year the very thing which the statute declares shall be conclusive. True, they did not change the item of "amount of cash on

hand." It is also true, from evidence now known, that such item was largely incorrect and should have been changed. But if the board acted upon it, and with the best information which they were able to obtain, their decision is final, however mistaken as to the real facts that decision may have been. *Sheppard* v. *Atwater Mfg. Co.*, 43 Conn., 448; *Stannard* v. *Sperry*, 56 id., 541.

The board of equalization has only ten days in which to perform its duties. The proper officer of each corporation is to send in to the comptroller the required statement within the first ten days of January in each year. The board of equalization must act within the next ten days, and the tax is required to be paid on or before the twentieth day of that month. The board is to act on the best information it can obtain. No duty to investigate or to make inquiry is imposed on them. They are not authorized to send for witnesses or to interrogate them if they should come, or to administer oaths or to require an answer. They have no power to require books or papers to be shown them or to examine in any way to obtain information. When the statute says they are to act upon the best information which they can obtain, it means the best information which they can obtain in the limited time and with the restricted powers which they possess. If they fail to find evidence which longer time or ampler powers might bring to their knowledge, the statute should be blamed and not the members of the board.

The board of equalization having undertaken to act on these several statements must be presumed to have done their entire duty. Having acted upon some of the items contained in each statement, presumably they considered and passed upon all. On this point however the evidence leaves no room for presumption. The testimony of the former members of the board is decisive. That evidence was to the effect that the board of equalization, at the time it made the corrected statements aforesaid and returned copies thereof to the defendant, had no knowledge that the item "amount of cash on hand" included anything except actual cash on

hand; that they relied entirely upon the truth of the treas-
urer's sworn statement as to the contents of that item.
This testimony, whatever else it may show, proves that the
attention of the board was called to the item of " amount of
cash on hand," and that they in fact considered and passed
upon it; and that in doing so they acted upon the best in-
formation they could obtain and upon that information found
no occasion to change it.

The twenty-first section above quoted provides that no ac-
tion commenced by the state for a tax shall be barred or
defeated by reason of the omission or failure of the board
of equalization to perform the duties required of them. In
this case, as we have seen, the board had acted. So that
there has been no omission or failure to perform their duties.

The Superior Court is advised to render judgment for the
defendant.

In this opinion CARPENTER, SEYMOUR and TORRANCE,
Js., concurred. LOOMIS, J., dissented.