# CRIMINAL CASES.

## COMMONWEALTH *vs.* ISAAC F. SHEPARD.

Evidence of another act of embezzlement committed by a defendant in the same week with one charged against him in an indictment, is competent only for the purpose of proving guilty intent on his part, in the commission of the principal act; and the admission of such evidence in a case which, after a verdict of guilty, is reported by a judge of the superior court for the determination of this court, is sufficient ground for a new trial, if it does not appear that it was limited to its legitimate effect by instructions to the jury.

An indictment under *St.* 1846, *c.* 171, § 1, against an officer of a bank for fraudulently taking and secreting particular and designated moneys with intent to convert the same to his own use, is not supported by proof that he received the moneys in question as a deposit in the bank, from a depositor, and entered the same in the name of the depositor in an account book kept for that purpose, and that he afterwards fraudulently erased the entry, altered the footing of the column so as to make it appear that no such sum had been received, and entered the amount so deposited upon the account of the depositor in the ledger as having been received two months before the time of its actual receipt; if there is also evidence from which it may reasonably be inferred that the erasure, alteration, and false entry were not made until several days after the receipt of the money, and the making of the original and true entry thereof, during which time there is no proof of any fraudulent intent on his part respecting it, or that it was not put, kept and used with other funds of the bank.

INDICTMENT against the treasurer of the People's Five Cents Savings Bank in Boston, for fraudulently converting to his own use, and fraudulently taking and secreting certain moneys belonging to that institution. The indictment was founded on *St.* 1846, *c.* 171, § 1, which is copied in the margin.* The second count, on which alone a verdict of guilty was returned, alleged that the defendant, on the fourteenth day of April 1857, while

---

* *St.* 1846, *c.* 171, § 1. "If any officer of an incorporated bank, or any person in the employment of such bank, shall fraudulently convert to his own use, or fraudulently take and secrete, with intent to convert to his own use, any bullion, money, note, bill, or other security for money, belonging to, and in possession of such bank, or belonging to any person and deposited therein, he shall, whether intrusted with the custody thereof, or not, be deemed thereby to have committed the crime of larceny in said bank, and shall be punished by imprisonment in the state prison not more than ten years, or by fine not exceeding one thousand dollars, and imprisonment in the county jail not more than two years."

he was the treasurer, &c., did fraudulently take and secrete, with intent to convert to his own use, certain bank-bills then and there current as money, each of some bank to the jurors unknown, of the amount in all of one hundred dollars, and of the value in all of one hundred dollars, a more accurate description of which the jurors could not give, and certain gold coins then and there current as money, each of a denomination and value to the jurors unknown, of the amount in all of one hundred dollars, and of the value in all of one hundred dollars, then and there belonging to and being in the possession of the People's Five Cents Savings Bank aforesaid; he, the said Shepard, when he so fraudulently took and secreted said bank-bills and said gold coins, with intent to convert the same to his own use, then and there being intrusted with the custody thereof by the People's Five Cents Savings Bank aforesaid; and by so doing, and by force of the statute in such case made and provided, he, the said Shepard, is deemed then and there to have committed the crime of larceny in the People's Five Cents Savings Bank aforesaid; adding, as a conclusion, that the defendant stole the said property, in the ordinary form of an indictment for larceny.

Various other acts of fraudulent conversion, and of fraudulent taking and secretion of moneys belonging to the same institution, were charged in other counts of the indictment.

The case came before this court upon a report by *Brigham*, J., before whom it was tried in the superior court, for the determination of the question whether all the evidence introduced was sufficient to authorize the verdict of guilty upon the second count. The following is a statement of the material facts reported.

The incorporation and organization of the bank, and the appointment of the defendant as its treasurer, were agreed.

John Woods, a witness on the part of the Commonwealth, testified that, in the early part of April 1857, he deposited in the Savings Bank referred to the sum of $200, one half of which was in bank-bills, and one half in gold coins; that he thought that he gave the money deposited to the defendant; that he had his pass-book with him, (which was here produced and iden-

tified,) in which the defendant made an entry, and returned it; that he had previously deposited money in the bank; and that, at this time, he did not notice what the defendant did with the money deposited, or whether he put it into the drawer of the bank or not. The pass-book contained an entry of a deposit of $200 on the 9th of April.

An account book of the bank, called the "old waste," was produced, and page 87 of the same was exhibited to the jury. It was agreed that a part of the writing on this page was by the defendant, and part by another person;. and that the page contained a statement of the deposits of money by old or former depositors for the week from April 8 to April 14, inclusive. Upon this page it appeared on inspection that an entry of a deposit of $200, received from John Woods, had been erased and "Nobody" written in place of the name, and three ciphers in place of the figures; and that the whole amount of deposits received for the business week ending April 14, as there cast up, amounted to $1034.08. It appeared by the admission of the district attorney upon the hearing of a motion for a new trial, that the jury discovered, after retiring to deliberate on their verdict, that the footing of the column upon this page, which showed the amount of deposits received for that week, had originally been entered as $1234.08, but had since been altered from that sum to $1034.08; and that this fact was considered by them in finding their verdict, although not relied upon or alluded to in the course of the trial.

The ledger of the bank was also introduced, and the page thereof containing the account of John Woods was exhibited to the jury; by which it appeared that the sum of $200 was therein credited to him under date of February 8, and no sum at all in April.

A book containing the weekly statements of the condition and business of the bank was also introduced, by which it appeared that, in the statement of the business week ending April 14, the amount of deposits transferred from the "old waste" was entered at $1034 08.

George A. Pratt testified that he was employed by the de-

fendant in the bank, from the middle of April until November 1857; that he was acquainted with the defendant's handwriting; that he had examined the books of account referred to, and that the footing of the page in the "old waste," the weekly statement for the week ending April 14, and the entry in the account of John Woods, under date of February 8, were all written by the defendant. Upon cross-examination, he further testified that the "old waste," ledger and weekly statements were always open to the inspection of the directors of the bank; that the funds of the bank, in April 1857, were deposited in the Bank of North America and Exchange Bank; that this fact was or might have been known to the officers of the savings bank; that the check-books of these banks were exhibited to the examiners; that amounts deposited in them were entered in the check-books; that usually money was kept in the vault of the savings bank, for the payment of small amounts and for exchanging bills; that the accounts of moneys deposited in the Exchange Bank were kept in the name of the defendant, but that the accounts of moneys deposited in the Bank of North America were kept in his name as treasurer.

Edward C. Purdy testified that he also was employed in the bank at the time in question; that he wrote the entries on page 87 of the "old waste," from "Nobody" to the end of the column; that, according to his recollection, he first saw the entry of "Nobody" in the grand jury room; and that the other entries on that page were made by the defendant.

Another page of the ledger was also allowed to be exhibited to the jury, under objection, showing an entry made in the handwriting of the defendant, of $500 received from Daniel L. Rich, in the same week when the $200 was received from John Woods, but which did not appear in the "old waste"; which was admitted as evidence tending to show another embezzlement by the defendant committed near the time of the act charged in the indictment.

Evidence was introduced in defence, showing that there was an increase of the balance to the credit of the defendant in the Exchange Bank, from the 7th to the 21st of April, of $54.08;

that this account was always kept in the name of the defend-
ant; that there was an increase of the balance to the credit of
the defendant as treasurer of the savings bank, in the Bank
of North America, in the same time, of $958; and that, on the
10th of April, a loan of $100 was made by the defendant to
Allen Shepard, a member of the firm of Henry Taylor & Co.,
which was entered among the disbursements of the bank on
that day. There was also evidence tending to show that the
amount of money on hand, in the savings bank, on the morning
of April 8, was very small; and the book of weekly statements
was again exhibited to the jury, which showed that, from the
7th to the 21st of April, the amount of deposits held by the
bank was increased by the sum of $1600, and the amount of
loans made by it was increased by the sum of $500; leaving
a net increase of funds to be accounted for in that time of
$1100.

Many other books, accounts and papers were submitted to
the jury upon one side and the other, and were reported in
detail to this court; but the above are all which are essential
to an understanding of the case.

*B. F. Butler & N. St. J. Green,* for the defendant. 1. The
evidence as to the account of Daniel L. Rich was improperly
admitted. *Commonwealth* v. *Miller,* 3 Cush. 243. *Common-
wealth* v. *Eastman,* 1 Cush. 216. *Commonwealth* v. *Tuckerman,*
10 Gray, 173. 2. There was no sufficient evidence to prove
that the defendant ever took the money after it became the
property of the bank. The only evidence of a taking is that
of John Woods; and his evidence shows a rightful taking of
the property of Woods, and not a fraudulent taking of the prop
erty of the bank. 3. There was no evidence of the secretion
of the money. The only evidence offered was to show a con-
cealment of the fact that the money was received; not a secre-
tion of the money itself. If the defendant received the money,
and put it in the bank, and kept it, or deposited it, and then
altered the books to conceal the fact that he had received it, this
is not a secretion of the money. The making ot a false entry
by a bank officer is punishable under another statute. *St.* 1856,

*c.* 123, § 3. 4. The evidence tends more strongly to show an actual embezzlement than an attempt to embezzle; but the defendant was acquitted upon the first count, which charged an embezzlement of this money. 5. But the whole evidence shows that the defendant was guilty of neither charge. All of the money in the possession of the bank on the 8th of April, and received by it after that date, is accounted for. 6. If the evidence tends to show that the defendant was guilty of any embezzlement or any concealment, it was another and different embezzlement or concealment from that charged in the indictment, and prior to it in point of time. On this indictment the defendant cannot be convicted of an attempt to conceal such former embezzlement, by appropriating the money of Woods to the use of the bank, without acknowledging its reception, in order to make good the deficiency caused by his prior embezzlement.

*Foster*, A. G., for the Commonwealth. 1. Evidence of other acts of embezzlement, at about the same time with the acts charged, was admissible to show a fraudulent intent. *Commonwealth* v. *Tuckerman*, 10 Gray, 173. 2. The evidence warranted a conviction of the defendant upon the second count, for fraudulently taking and secreting with intent to convert to his own use, under *St.* 1846, *c.* 171, § 1. The evidence consisted chiefly of the following: the erasure of the entry of John Woods's deposit on page 87 of the "old waste"; the alteration of the footing of the column on the same page; the entry of the $200 to Woods's credit under date of February 8 1857 — an antedating for which no honest explanation can be given, and which must have been done for the purpose of carrying back the entry to a time previous to examinations of his accounts, and of thus concealing the receipt of the money, and eluding the investigations of the examiners; the fact that a deposit of $500, which was not entered, was received the same week; and the want of proof by the defendant either of an actual deposit by him of the $200, or of such a course of business that a deposit of it may be reasonably inferred. A fraudulent taking must almost always be shown by subsequent

circumstances. The proof of a fraudulent concealment was sufficient to prove the secretion charged; and the inference, that this was done with intent to convert the money to his own use, was the natural inference to be drawn from all the circumstances of the transaction. As there is no room for the supposition that the conduct of the defendant as to this money was innocent, it was peculiarly within the. province of the jury to characterize the precise nature of his criminal conduct. The argument that there could be no fraudulent taking because it was the official duty of the defendant to receive the money, is equally applicable to all cases of embezzlement in which the offence begins by a taking from third parties under an agency. Direct and specific evidence of the precise time when the fraudulent purpose was first formed, and of the precise manner in which the first act was done in pursuance thereof, can, from the nature of the crime, hardly ever be attainable. It should be assumed that the facts in evidence were submitted to the jury under proper instructions. Upon the general law of embezzlement, as applicable to this case, see *Rex* v. *Hall*, 3 Stark. R. 67; *Rex* v. *Grove*, 1 Mood. C. C. 450; *Regina* v. *Murdock*, 8 English Law & Eq. 578; *Regina* v. *Moah*, 36 Ib. 592; *Regina* v. *Lister*, 37 Ib. 600; *State* v. *Haskell*, 33 Maine, 130; *Commonwealth* v. *Tuckerman, ubi supra.*

BIGELOW, C. J. 1. Evidence of another act of embezzlement by the defendant, during the same week in which that charged in the second count of the indictment was alleged to have been committed, was competent only for the single purpose of proving a guilty intent in the mind of the defendant in the commission of the principal act. It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him, and for which he is on trial, but also because it may lead the jury to violate the great principle, that a party is not to be convicted of one crime by proof that he is guilty of another. For this reason, it is essential to the rights of the accused that, when such evidence is admitted, it should be carefully limited and guarded by instructions to the jury, so that its operation and effect may be

confined to the single legitimate purpose for which it is compe-
tent. Roscoe Crim. Ev. 90, 94. *Rex* v. *Ball*, Russ. & Ry. 132.
*Commonwealth* v. *Eastman*, 1 Cush. 189, 216. In the present
case, there is nothing in the report which shows that any specific
instructions were given on this point. , For aught that appears,
this evidence was admitted as general proof of the guilt of the
defendant, and the jury were left to draw such inferences from
it as they might think proper. If this case came before us
upon a bill of exceptions, in which, according to our practice,
the party aggrieved is bound to make it appear that the rulings
and instructions of the court were erroneous, we might presume
that correct and appropriate instructions were given to enable
the jury to make a proper application of this evidence. But
such a presumption cannot be made against a defendant in a
criminal case, where the judge who tried the cause, in the exer-
cise of his judicial discretion, has deemed it proper to present
the questions of law in the form of a report. On the contrary,
the fair inference is that, in such case, nothing is omitted by him
which could in any way have been material in its bearing on
the validity of the objection taken to the ruling of the court.

2. The more important question presented by the report is,
whether the evidence was sufficient in law to support a convic-
tion of the defendant upon the second count in the indictment.
The manner in which the case is reported for our consideration
is not favorable to a clear and correct apprehension of the facts
to which it is our duty to apply the legal principles on which
the decision of this part of the case must turn. A full and care-
ful statement of the evidence, in its bearing on the points in issue,
would have presented the question in a much more intelligible
form ; but a loose and disconnected detail of the facts proved,
which cannot be understood without reference to long schedules
of figures and an inspection of numerous and complicated ac-
counts, affords a very inadequate and imperfect view of the case,
and renders it difficult to determine with accuracy the question
of law which it is the object of the report to present for our
adjudication. Perhaps this difficulty is attributable to the na-
ture of the evidence adduced at the trial. We have referred *to*

it, in order to account for any obscurity which may arise in stating the conclusion to which we have arrived on this part of the case.

The defendant was convicted only on the second count in the indictment. By it he was charged, under *St.* 1846, *c.* 171, § 1, with the offence of fraudulently taking and secreting, with ntent to convert to his own use, certain bank-bills of the amount of one hundred dollars, and certain gold coins of the same amount, a description of which was unknown to the grand jury. It is obvious that this was intended as a charge of fraudulently taking and secreting certain specific bills and coins, being a particular, designated amount or sum of money belonging to and in the possession of the bank ; and was not meant to be a general allegation of taking money of the bank with a fraudulent intent, authorized by the second section of the act above cited, under which any taking with such intent, committed within six months after the time alleged in the indictment, might be proved. It was treated at the trial as a charge of taking and secreting a specific sum. The proof offered by the government tended to show that the sum of $200 was deposited in the bank by one John Woods, on the 9th day of April 1857; $100 of it being in bank-bills, and $100 in gold coin. It was this sum which the government sought to prove was fraudulently taken and secreted by the defendant.

It is unnecessary, in the present case, to define with accuracy the precise distinction between a fraudulent conversion of money and a fraudulent taking and secretion with intent to convert it, which are the two offences against which the penalties of *St.* 1846, *c.* 171, are aimed. The second count in the indictment, on which the defendant was convicted, sets out the latter offence. It was therefore necessary to prove a fraudulent taking of the specific money, as well as a secretion by the defendant with intent to convert it to his own use. The main evidence connected with the principal transaction, on which the government relied to obtain a conviction, was an alteration in the entries made in the books of the bank in relation to this deposit of money by Woods. Upon this point it was proved that the

sum deposited was received by Shepard, and was entered by him in the proper book, called the " old waste," in regular form, showing that it was deposited by John Woods. This entry was probably made on the 9th of April, the same day on which the money was received. It appeared on a careful scrutiny that this entry had been subsequently erased, the word " Nobody " being written in place of the name of " John Woods," and three ciphers instead of the figures " 200," over these erasures. It was also ascertained by the jury, on inspecting this book, after they had retired to deliberate on their verdict, that the footing of the column of figures, in which the 200 was originally entered, had also been altered by an erasure from 1234 to 1034, so as to make the footing correspond with the other alterations by which 200 had been taken out of the figures which made up the sum total. There was evidence which tended very strongly to show that the words and figures thus altered were in the handwriting of the defendant. It also was proved that on the page of the ledger on which the account of John Woods was posted, the sum of $200 was there carried to his credit in the defendant's handwriting, as a deposit made on the 8th day of February 1857, instead of on the 9th day of April following, when it was in fact made. These facts, standing by themselves, in the absence of any explanation, and without a critical examination of the dates of the entries, would certainly go very far to support the allegation in the second count of the indictment, because the fraudulent taking, which is an essential ingredient in the crime of embezzlement, may always be shown by subsequent circumstances, especially by proof of false entries relating to the money alleged to be taken in the regular books of account kept by the defendant in behalf of his principal or employer. But, on looking carefully at these entries and erasures, and comparing them with other contemporaneous entries, the correctness of which is not drawn in question, it will be found that the inferences to be drawn from them do not necessarily and directly tend to prove the specific offence charged on the defendant. In the first place, it is clear that the defendant did not fraudulently take the money deposited by Woods at

the time he received it.   He was the officer of the bank whose proper duty it was to take money from depositors, and his reception of it was *prima facie* rightful.   He duly entered it in the book of the bank, as so much money deposited in the regular course of business.   So far he did his exact duty, and the case shows no fact from which the inference of any fraudulent intent concerning this money can be drawn, at or immediately after its receipt.   In the next place, there is no proof of any wrongful act or fraudulent conduct on the part of the defendant, in relation to this transaction, until the making of the false entries and erasures in the books which have been already described. It therefore becomes material to ascertain, if possible, when they were made.   An inspection of other entries on the same page of the " old waste " with that which contains these alterations, taken in connection with the weekly statement of the condition of the bank made on the 15th of April by the defendant, clearly shows that they were not made until five days after the deposit of the money by Woods — that is, on the 14th day of April.   The course of business of the bank was to make up weekly accounts of its condition.   To effect this, it was necessary that the sums deposited, as entered on the " old waste," should be added up at the end of each business week. in order to be carried into the general statement.   Such addition was made of the sums deposited during the week ending on the 14th day of April, including that deposited by Woods; and it must have been made at the end of this week, because, in order to obtain the sum total of 1234 as originally written before the erasure, it is necessary to include all the deposits received up to the end of the business week.   The alterations must therefore have been made after all the deposits of that week had been received and entered ; certainly as late as the fourteenth day of the month.   It is equally clear that it was made before the weekly statement of the condition of the bank was prepared on the 15th of April, because the sum total of deposits entered in the " old waste " is carried into the statement at the reduced amount of 1034, at which it stood after the erasures.   Here then was an interval of five days, during which the money

received from Woods appeared duly entered on the books of the bank, and there was no act indicating any fraudulent intent on the part of the defendant respecting it. Nor is there any proof whatever that the money itself was not put with the other funds of the bank, and used in paying depositors, making investments, or otherwise appropriated in the regular course of business. This state of the evidence leaves great room for reasonable doubt, whether the erasures relied on as proof of the fraudulent taking of this specific sum are not equally consistent with the belief that they were made, not to conceal the fraudulent taking of the money deposited by Woods, but for the purpose of concealing a previous defalcation, or some prior act of embezzlement. This doubt is greatly strengthened when it is considered that there is no evidence of any deficiency in the money belonging to the bank occurring during the week when this transaction took place, nor of any abstraction of funds which can be traced to this particular point of time. On the contrary, an examination of the receipts, disbursements and appropriations by the defendant in behalf of the bank, in connection with the amount deposited by him in other banks in which he was accustomed to keep the moneys received by him, from the 8th to the 21st of April, tends to show that he did not take this specific sum of money out of the funds belonging to the bank, but that it was included with other moneys received by him, and went to make up the general balance of money which was passed to his credit in the banks, where, with the knowledge and assent of the directors of the savings bank for which he acted, he deposited from day to day his current receipts, and paid out by checks his necessary disbursements. The legitimate inference from this is, not that he took the money deposited by Woods with any fraudulent intent to convert it to his own use, but that he received it rightfully, entered it properly in the books, and put it with other moneys belonging to the bank, so that it went to their use; and that five days afterwards he altered the entries in the books, in order to conceal the fact that he had received this sum, and thereby to cover up some previous deficit occasioned by former dishonest and fraudulent acts. We are there-

fore of opinion that the evidence was not sufficient to support the second count in the indictment. The government were bound to prove the exact offence as it was charged in that count. Doubtless there was proof that the defendant had been guilty of making false entries in his books, and perhaps evi‑ dence which tended to show previous acts of embezzlement. But he was not convicted on any count in the indictment which charged such offences. Looking at the case, as we are bound to do, without any reference to the supposed culpability of the defendant in other respects, but as a question of the proper application of the facts proved to the crime charged, and with a single eye to the firm and impartial administration of the law, we are compelled to say that there was no adequate proof that the specific sum of $200, as charged in the second count, was fraudulently taken by the defendant, and that on this ground the verdict of the jury was erroneous.

*Verdict set aside.*