THE STATE v. J. E. COLSON, Appellant.—30 S. W. (2d) 59.

Division Two, June 11, 1930.

*Roy McKittrick* for appellant.

512

*Stratton Shartel*, Attorney-General, and *Carl J. Otto*, Assistant Attorney-General, for respondent.

HENWOOD, C.—By an information filed in the Circuit Court of Chariton County, at Salisbury, on September 12, 1928, the defendant was charged with embezzling $54.50 of the funds of Missouri Township, one of the townships of Chariton County, while acting as trustee and *ex officio* treasurer of said township. The jury found him guilty and assessed his punishment at imprisonment in the penitentiary for two years. From the judgment and sentence entered on the verdict, he has perfected an appeal to this court.

The evidence adduced by the State is, in substance, as follows: Chariton County adopted the Township Organization Law more than twenty-five years ago, and has been subject to the provisions thereof ever since. From April, 1919, until May, 1924, the defendant was the duly elected, qualified and acting trustee and *ex officio* treasurer of Missouri Township, in Chariton County, and, as such officer, had charge and custody of all of the funds of said township. These funds were received by the defendant from the township collector, the county collector and the county treasurer: He kept separate records of the township funds, school funds and road funds, but deposited them in a single account, in the Farmers Bank of Forest Green, in Chariton County, in the name of J. E. Colson, trustee. He filed annual settlements, covering his receipts and disbursements, every year except the last year of his service. The other members of the board of directors of the township "just took his figures" without ascertaining whether or not he actually had on hand the funds shown as balances in his annual settlements. In the latter part of May, 1926, he abandoned the duties of his office and left Chariton county, without notice to the other members of the township board or his bondsmen, and went to Kansas City, Missouri. A few days thereafter, he wrote letters to his bondsmen, in which he admitted that he had "failed" in the performance of his official duties, and that he was short "around $3000" in accounting for the funds of the township. In one of these letters, he said "it would be a good idy" to examine his books, for the purpose of determining the exact amount of his shortage, and also said: "I am not trying to doo you all nor am I trying to Beat you all for if you want me you can git me easy. But if you all will leave me alone so I can do something I do not expect to let you lose one dollar." In another one of these letters, he said that he had signed, and forwarded to his wife, a deed, covering the conveyance of a part of his farm to his bondsmen, which his wife would sign and deliver,

in accordance with his arrangement with her, and also said: "This is all I can do un till the Glasgow Saving Bank is satisfied." The deed mentioned in this letter was signed and delivered to his bondsmen by his wife, but, later, the land so conveyed to them was sold at a foreclosure sale to satisfy encumbrances, and the bondsmen did not realize anything out of the sale of said land, nor out of the personal property of the defendant. Upon investigation, it was discovered that, at the time the defendant left Chariton County, there was no balance in the account of J. E. Colson, trustee, in the Farmers Bank of Forest Green, and no balance was found in any bank account of J. E. Colson, trustee, except "five dollars and some odd cents" in the Bank of Dalton. According to the defendant's books and the books of the township collector, the county collector, and the county treasurer, when the defendant left Chariton County, in May, 1926, he should have had on hand $1210.81 in the township fund, $2610.30 in the school fund, and $2074.79 in the road fund, or a total of $5895.90; and on April 16, 1924, he should have had on hand a total of $4685.94, but according to the ledger sheet of the Farmers Bank of Forest Green, there was a balance of only $1290.67 in the account of J. E. Colson, trustee, at that time. On April 12, 1924, the defendant gave to C. E. Chapman, a merchant in Keytesville, Missouri, a check of that date, for $54.50, payable to C. E. Chapman, drawn on the Farmers Bank of Forest Green, signed J. E. Colson, trustee, and written in the defendant's handwriting. Chapman deposited this check in the Farmers Bank of Keytesville, and it was paid by the Farmers Bank of Forest Green on April 16, 1924, out of the account of J. E. Colson, trustee. According to the testimony of Chapman, the defendant bought a set of harness from him in the spring of 1924, at the price of $52.50, and gave him a check for that amount, drawn on the Glasgow Savings Bank, which "wouldn't go;" and the defendant gave him the check for $54.50, drawn on the Farmers Bank of Forest Green, "to take up" the check for $52.50, drawn on the Glasgow Savings Bank, and the "protest fee" of $2. Missouri Township was never indebted to Chapman for harness or anything else, and the township board never ordered a warrant drawn in favor of Chapman, and the defendant was never authorized by the township board to pay Chapman any money out of the township funds. In November, 1926, when the defendant was arrested in Kansas City, Kansas, he told the Prosecuting Attorney of Chariton County that, during the summer and fall of 1926, he worked with threshing machines in Kansas, Nebraska, Minnesota, the Dakotas and Canada, and admitted that he was short about $3,000 in accounting for the funds received by him as trustee of Missouri Township.

Several of the State's witnesses testified, on cross-examination, that the defendant's reputation for honesty and integrity was good,

516

prior to the commencement of this prosecution. And, in connection with the cross-examination of the State's witnesses, the defendant offered in evidence several exhibits, some of which were admitted and some excluded.

No evidence was offered by the defendant after the close of the State's case.

Other facts developed at the trial, and proceedings relating thereto, will be noted in the discussion of the questions presented for our consideration.

I. The defendant contends that he is charged with embezzling $54.50 of the funds of Missouri Township, and that the $54.50 in question was taken out of a bank account consisting of school funds and road funds as well as township funds, and that, therefore, there is a variance between the charge and the proof.

Section 3334, Revised Statutes 1919, upon which the information is based says: "If any officer, appointed or elected by virtue of the Constitution of this State, or any law thereof, . . . shall convert to his own use, in any manner whatever, . . . any portion of the *public moneys, or any moneys that may have come to him or them by virtue of his office or official position,* . . . every such officer . . . shall, upon conviction, be punished in the manner prescribed for stealing property of the kind or the value of the article so embezzled," etc. [Our italics.] It is charged in the information, among other essentials, that "the defendant J. E. Colson did unlawfully and feloniously convert to his own use moneys that came to him by virtue of his office as trustee aforesaid, to-wit, $54.50 lawful money of the United States and all of the property of the said Missouri Township, which said money came to and was collected by the said J. E. Colson by virtue of his official position aforesaid," etc. While it is alleged that the defendant embezzled $54.50 "of the property of the said Missouri Township," it is also alleged that the said $54.50 was a portion of the public moneys, that is, "moneys that came to him by virtue of his office as trustee" of said township. And, while the evidence shows that the check in question, for $54.50, was paid out of a bank account consisting, in part, of moneys distributable among four school districts and three road districts in Missouri Township, it also shows that these moneys, as well as other moneys, were turned over in the regular course to Missouri Township, a body corporate, of which the defendant was the financial custodian. So, to say the least, these moneys were received and held by Missouri Township in trust for said school districts and said road districts. Moreover, these moneys were "public moneys" that came to the defendant "by virtue of his office," within the meaning of the statute. It follows that there

is no material variance between the charge and the proof in this case. ·[State v. Hays, 78 Mo. 600; State v. Baker (Mo. Sup.), 285 S. W. 416; State v. Adams, 318 Mo. 712, 300 S. W. 738.]

II. It is urged that the trial court erred in permitting the State's witnesses Young, Goll, Elliott and Crow to give the result of their examination of the defendant's official books, records and papers, and certain books, records and papers of the township collector, the county collector, and the county treasurer, relating to the defendant's official accounts.

Young and Goll were formerly officers of Missouri Township, and Elliott and Crow were formerly officers of Chariton County. All of them had previously kept and audited books and accounts of this character. The books, records and papers referred to were produced at the trial and admitted in evidence, but were too voluminous to be examined in court conveniently. Under these circumstances, it was proper to permit these witnesses to testify as to the result of their examination of said books, records and papers. [See State v. Findley, 101 Mo. 1. c. 223, 14 S. W. 1. c. 186, and authorities cited.]

III. It is also urged that the trial court erred in permitting these witnesses to testify concerning shortages in the defendant's official accounts before and after the time of the embezzlement alleged in the information.

The State was entitled to prove the commission of the offense charged at any time within five years prior to September 12, 1928, the date of the filing of the information, although such offense is alleged to have been committed "on or about April 12, 1924." [Sec. 3737, R. S. 1919.] And, even though some of this testimony was incompetent, it cannot be said that such testimony was prejudicial, in view of the proof of the defendant's admission that he was short about $3,000 in accounting for the funds of the township.

IV. The defendant complains of the action of the trial court in denying his request for sufficient time to examine a mass of checks, warrants and other papers relating to his disbursements of township funds, which were among the books, records and papers produced by the State at the trial.

Considering the nature of the offense charged, the defendant should have anticipated the necessity of examining these checks, warrants and other papers in the preparation of his defense, and the court did not abuse its discretion· in refusing to allow him time for such an examination during the progress of the trial.

V. The defendant further complains of the action of the trial court in reading Section 13204 of the Revised Statutes of 1919 to the jury, in connection with the withdrawal of his exhibits 11 to 18, inclusive, from the consideration of the jury.

These exhibits, bank checks signed "J. E. Colson, trustee," and purporting to cover disbursements of township funds, were originally admitted in evidence, but, later, withdrawn, upon the motion of the prosecuting attorney. In connection with its ruling that these exhibits should be withdrawn, the court read to the jury the statute above mentioned, which provides, among other things, that "The township trustee and *ex officio* treasurer shall not pay out any moneys belonging to the township for any purpose whatever, except upon the order of the township board of directors, signed by the chairman of said board and attested by the township clerk." After reading this statute, the court said to the jury: "Gentlemen, I want you to understand that in withdrawing these checks, from 11 to 18, the court called your attention to special section—for the reason, so that you would not take those into consideration, that was the only thing that the court attempted to offer or suggest to you. These were erroneously admitted yesterday, and therefore the court wants to correct that error and withdraw them so they will not be taken into consideration."

It was not proper for the court to read to the jury the statute relating to the duties of a township trustee, in ruling on the admissibility of these exhibits. The jury must be instructed *in writing* on questions of law, *after the conclusion of the evidence,* and such instructions must be placed in the hands of the jury for their information while deliberating on their verdict. [Sec. 4025, R. S. 1919.] But, remembering the proof of the defendant's admissions, that he had "failed" in the performance of his duties as township trustee, and that he was short in his accounts of township funds, we think this error was harmless.

VI. The defendant further contends that the trial court erred in giving the State's instructions numbered 3 and 5, and in refusing his instructions numbered 7, 14 and 17.

The State's Instruction 3 advised the jury as to the manner in which they should consider the proof of the defendant's extrajudicial statements. Instructions in substantially the same form have been approved by this court in numerous cases. [State v. Johnson, 316 Mo. 86, 289 S. W. 847; State v. Hutchens, 271 S. W. 525; State v. Hamilton, 304 Mo. 19, 263 S. W. 127.] See, also, State v. Northington, 268 S. W. 57; State v. Eason, 18 S. W. (2d) 71. We find no error in this instruction.

By the State's Instruction 5, the jury were told that, if they found and believed from the evidence, that, "soon" after the commission of the offense charged, the defendant fled from Chariton County for the purpose of avoiding arrest and prosecution, such flight should be considered in determing his guilt or innocence. There was no evidence upon which to base a finding that the defendant fled "soon" after the commission of the offense charged, but there was evidence upon which to base a finding that he concealed the offense charged, and that he fled before such offense was discovered. An instruction in conformity with this evidence would have been proper. The instruction given did not authorize the jury to consider the defendant's flight, in determining his guilt or innocence, unless they found that he fled "soon" after the commission of the offense charged. As we view it, this instruction was beneficial to the defendant. Certainly it was not prejudicial.

The defendant's refused instructions 7 and 14 were covered, in effect, by the State's Instruction 2, and the defendant's refused Instruction 17 was covered, in effect, by the State's Instruction 6. Having given instructions covering the same subject-matter, the court did not commit error in refusing the defendant's instructions 7, 14 and 17. [State v. Howard (Mo. Sup.), 23 S. W. (2d) 16.]

This disposes of all assignments of error which are "set forth in detail and with particularity" in the motion for a new trial. [Sec. 4079, Laws 1925, p. 198.] The information and the verdict are sufficient in form and substance, and the evidence is amply sufficient to support the verdict. The judgment is accordingly affirmed. *Davis* and *Cooley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.