STATE OF CONNECTICUT *v.* MAUREEN D. MORENO

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued December 5, 1967—decided March 14, 1968

*Leo Gold,* with whom was *Isadore M. Mackler,* for the appellant (defendant).

*Joseph T. Gormley, Jr.,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

RYAN, J. The defendant was charged with embezzlement by agent in violation of General Statutes § 53-355.[1] The information alleges that "between the 20th day of August 1965 and the 30th day of September 1965, at Stamford . . . , the said Maureen D. Moreno, being the agent of Jean Ballin Designs, Inc., did appropriate to her own use or to

---

[1] "Sec. 53-355. EMBEZZLEMENT BY AGENT. Any auctioneer, commission merchant, factor or broker or any agent or attorney of any private corporation, voluntary association, business house or private individual, who takes, purloins or secretes, or in any way appropriates to his own use or to the use of others, any of the goods, moneys, choses in action or property in his care or custody as such auctioneer, commission merchant, factor, broker, agent or attorney, or any moneys received by him for the sale of such goods, choses in action or property, or collected by him as such auctioneer, commission merchant, factor, broker, agent or attorney, with intent to defraud another, or, with like intent, makes any false entry upon any of their books, or keeps false books or entries of and concerning their business and affairs, shall be fined not more than one thousand dollars or imprisoned not more than ten years or both."

the use of others the sum of Four Thousand ($4,000) Dollars in the care and custody of the said Maureen D. Moreno as such agent, with intent to defraud the said Jean Ballin Designs, Inc."

The sole issue on this appeal is whether the evidence was sufficient, beyond a reasonable doubt, to sustain the conviction. To determine this question, it is necessary to review the evidence which has been printed in the appendices in the briefs. Practice Book § 644; State v. Carroll, 152 Conn. 703, 204 A.2d 412; State v. Bill, 146 Conn. 693, 694, 155 A.2d 752; Maltbie, Conn. App. Proc. § 213. From the evidence it appears that in July, 1965, the defendant was employed as a bookkeeper by Jean Ballin Designs, Inc., a corporation located in Stamford, hereinafter referred to as the corporation. Her duties consisted of general office work, including bookkeeping, payroll, handling of accounts payable, making out checks, keeping accounting records and general office supervision of employees. In late August, 1965, Douglas Ballin, Jr., the corporation's president, went on a vacation, leaving with the defendant eight blank, presigned checks with which she was to pay bills which would become due. No one but Ballin and his wife had authority to sign checks. On his return from his vacation, Ballin found that five of the checks had been used in accordance with his instructions and that three of them, including checks numbered 687 and 695, remained. He then gave the defendant instructions to use the three remaining checks to pay the first bills to become due. At this time, checks 687 and 695 contained only his signature and nothing else. The regular commercial account of the corporation for the payment of all obligations other than payroll was at The Fairfield County Trust Company. A record of all checks

drawn on the commercial account of the corporation was kept in a cash disbursement journal, in which each individual check was recorded. Ballin was familiar with the handwriting of the defendant. All entries in the cash disbursement journal from August 13 to August 31 were in the handwriting of the defendant. The entry opposite check 687 in the handwriting of the defendant was "ruined by checkwriter" and opposite check 695 the word "voided" was entered. Both of these checks were negotiated but were never found in the bank statements of the corporation which were in the defendant's control. Check 687, made payable to Emilio Greco in the sum of $1500, was paid by the bank and charged against the regular commercial account of the corporation on August 31, 1965. Check 695, made payable to Emilio Greco in the sum of $2500, was paid by the bank and charged against the regular commercial account of the corporation on September 30, 1965. Emilio Greco, the payee on these checks, was a brother-in-law of the defendant. Greco was neither an employee nor a creditor of the corporation, and Ballin never authorized the defendant to make any check payable to him. The signature on both checks was that of Ballin, but none of the other handwriting on these checks was that of either Ballin or his wife. This was determined by Ballin through an inspection of microfilms at the office of The Fairfield County Trust Company. The course of check 687 was from the Bank of Naples directly to the Chase-Manhattan Bank, to the Federal Reserve Bank, and then to The Fairfield County Trust Company. Check 695 went from the Bank of Naples to the Federal Reserve Bank and then to The Fairfield County Trust Company for payment.

Under General Statutes § 53-355, there are four essentials of the crime of embezzlement. They are: (1) agency of the defendant; (2) receipt by the defendant of the property described in the information; (3) conversion or appropriation of such property to the defendant's own use or to the use of others; and (4) a felonious intent to defraud. *State* v. *Serkau,* 128 Conn. 153, 157, 20 A.2d 725; *State* v. *Schofield,* 114 Conn. 456, 458, 159 A. 285.

The defendant claims that she was not an agent within the meaning of § 53-355 and that an examination of the statute leads to the logical conclusion that the legislature intended to provide a penalty against those persons who stood in some fiduciary relationship with their principal as defined by statute. She urges that the class of persons set forth in the statute is composed of auctioneers, commission merchants, factors, brokers, agents or attorneys, each of whom is one who, by the very nature of his calling, could be holding money or property for another, and that to place the defendant, a bookkeeper and office worker, in the same category as the professions and occupations set forth in the statute would be to stretch the statute beyond its obvious intent and language. This is, of course, a penal statute and must be strictly construed. It cannot be extended by construction to persons who are not included within its terms. *State* v. *Parker,* 112 Conn. 39, 46, 151 A. 325.

Under the earlier statutes of several of the states, punishment was provided for any agent, clerk or servant of any private person who should convert to his own use money or property of another which came into his possession by virtue of such employment. The courts of such states held that commission merchants, auctioneers, attorneys and persons

doing a general collection business stood upon a different footing from servants and special agents and were not within the term "agent" as used in such a statute. "In seeking to ascertain the legislative intent, we may look to the history of the statute and the policy underlying it. *State* v. *Cambria,* 137 Conn. 604, 606, 80 A.2d 516." *Lee* v. *Lee,* 145 Conn. 355, 358, 143 A.2d 154. The legislative history of § 53-355 is set forth in *State* v. *Lanyon,* 83 Conn. 449, 452, 76 A. 1095. Prior to 1897, our statute relating to embezzlement provided that "[e]very officer or agent of any private corporation . . . , or any agent of any business house or private individual, who shall take, purloin, secrete, or in any way appropriate to his own use . . . any of the goods, moneys, or choses in action, in the care or custody of, belonging to, or deposited with, such corporation, . . . house, or individual, with intent to defraud another" should be punished. Rev. 1888, § 1580. In the civil action of *Thompson* v. *Beacon Valley Rubber Co.,* 56 Conn. 493, 16 A. 554, this court was asked to rule that a consignee of goods to be sold on commission could not be guilty of embezzlement under this statute. The point was not decided. The court, however, said that such a consignee belonged to that class of agents called "factors" and that the court was not prepared to say that he was not within the purview of § 1580. After this decision, § 1580 was repealed, and the statute which is now General Statutes § 53-355 was enacted in its place. Public Acts 1897, c. 137. The only change in the statute between 1897 and the present time relates to the penalty provided therein. Public Acts 1915, c. 70. "By this Act commission merchants, auctioneers, factors, brokers, attorneys, and agents are made amenable for the misappropria-

tion of money, goods, or choses in action which are in their care and custody in such capacity, and for money received by them for the sale of such goods or choses in action, or collected by them in such capacity. This language is broad and comprehensive. It includes all auctioneers, commission merchants, factors, brokers, and agents, those employed in a general business as well as those specially employed, those who do the business upon commission, and those who do not so act. There is no reason for saying that a narrower meaning was intended. Factors, brokers, and commission merchants ordinarily work upon commission. In the decisions to which allusion has been made and upon which the defendant relies, this class of agencies . . . [was] held not to be included in the statutes referring to clerks, agents, and servants. It was doubtless in view of these decisions that the language of the present statute was used, and to settle any question which might exist in this State as indicated in the case of *Thompson* v. *Beacon Valley Rubber Co.*, 56 Conn. 493, 16 Atl. 554." *State* v. *Lanyon*, supra, 453. The inclusion in the present statute of auctioneers, commission merchants, factors, brokers and attorneys was not intended by the legislature to limit the interpretation of the term "agent" but to increase the scope of coverage of the statute and to clarify its meaning.

In an earlier case, this court was called on to determine whether an employee of a municipality could be found guilty under the terms of another embezzlement statute. Section 1583 of the Revision of 1888 provided that "[a]ny magistrate, or officer, or agent of any public community, who shall, with intent to prejudice it, appropriate its property to the use of any person, or make upon its books any

false entry, or draw any order upon its treasury, or present or aid in procuring to be allowed any fraudulent claim against any such community, shall be" punished. The information alleged that the defendant was an agent of the town and while so employed by the town did, as agent of the town, aid in procuring fraudulent claims to be allowed and in misappropriating funds of the city to the use of others. The defendant demurred to the information on the ground that he was a clerk and employee of the board of selectmen and not an agent within the meaning of § 1583 of the Revision of 1888. Although the defendant was obviously an employee of the town and not a magistrate or officer, the court held that he was an agent. "We find therefore that the defendant's employment was within the natural and ordinary meaning of the letter of the statute." *State* v. *Clerkin,* 58 Conn. 98, 104, 19 A. 517; see *Kops* v. *State,* 220 Ind. 373, 381, 42 N.E.2d 58.

"The term 'agent' as used in embezzlement statutes is construed in its popular sense as meaning a person who undertakes to transact some business or to manage some affair for another by the latter's authority, and to render an account of such business or affair. The term 'agent' as employed in such statutes imports a principal and implies employment, service, and delegated authority to do something in the name and stead of the principal—an employment by virtue of which the money or property embezzled came into the agent's possession. The employment, however, need not be permanent. It may be temporary, occasional, general, or special. The application of an embezzlement statute is not limited to instances where the agency involved is of long duration, or is broad and comprehensive in scope." 26 Am. Jur. 2d 577, Embezzlement, § 26. If at the time

of a fraudulent conversion the accused was an agent for a particular purpose only and the property appropriated was entrusted to him by virtue of such agency, embezzlement is committed. It is, not the extent of the authority conferred, but the fact of the relationship which constitutes the essential element of the crime of embezzlement. *State* v. *Campbell,* 99 Wash. 502, 504, 169 P. 968; see 2 Wharton, Criminal Law and Procedure § 527.

We conclude that the defendant was an agent of the corporation within the meaning of General Statutes § 53-355.

The defendant, relying on *State* v. *Hanley,* 70 Conn. 265, 270, 39 A. 148, claims that, since the information alleged that the defendant appropriated to her own use or to the use of others the sum of $4000, this meant the appropriation of money and not choses in action or other property. In *State* v. *Griswold,* 73 Conn. 95, 46 A. 829, the defendant, who was charged with embezzlement by a fiduciary or public officer in violation of § 1579 of the 1888 Revision, claimed that, since the information alleged the wrongful appropriation and conversion of money, he could not be convicted on proof that he had received checks. This court sustained the conviction. "There was a *prima facie* presumption of fact that the checks, being negotiable paper, had been regularly negotiated, and so had become money. 2 Whar. on Ev. § 1301. The information uses the term 'money.' That is a very general term and is often used to include checks or other like kinds of paper. In the case of *State* v. *New York, N.H. & H.R. Co.,* 60 Conn. 326, 333 [22 A. 765], this court had occasion to discuss the expression 'cash on hand.' It is there said: 'Bank notes, checks, drafts, bills of exchange, certificates of deposit, or other

like instruments which pass with or without indorse-
ment from hand to hand as money, or are immedi-
ately convertible into money, fall properly enough
within the words, "cash on hand." ' In ordinary
business usage a check means the same as money."
*State* v. *Griswold,* supra, 98.

The defendant urges that the instant case is dis-
tinguishable from *State* v. *Griswold,* supra, because
she never received checks, as such, from her em-
ployer but merely blank pieces of paper with a
name signed thereon, which, according to § 42a-3-104
of the General Statutes (Rev. to 1962), were not
checks or negotiable instruments since they did not
contain an unconditional promise or order to pay
a sum certain in money and were not payable to
order or to bearer.   Section 42a-3-115 provides as
follows: "(1)  When a paper whose contents at the
time of signing show that it is intended to become
an instrument is signed while still incomplete in any
necessary respect it cannot be enforced until com-
pleted, but when it is completed in accordance with
authority given it is effective as completed. (2) If
the completion is unauthorized the rules as to
material alteration provided in section 42a-3-407
apply . . . ."  The defendant had authority from
Ballin to fill the blank spaces and to pay bills of the
corporation as they became due.  From the evidence
hereinbefore recited, it is reasonable to infer that
the defendant caused the instruments in question
to be completed payable to Emilio Greco, her
brother-in-law.  When the bank paid these checks
from funds in the corporation account, they were,
of course, negotiable paper.

The defendant also urges that, since funds de-
posited in a commercial checking account create a
creditor-debtor relationship between the bank and

the depositor, such funds could not be moneys in the care and custody of the defendant. "Although there is authority to the contrary, it has been held that an accused who draws checks payable to his own creditor [or to third persons] against his principal's or employer's bank account has sufficient possession of the funds to support a conviction for embezzlement. The courts which take this view base it upon the fact that the accused has control, as in trust, of his employer's or principal's funds while they are mixed with the bank's general fund." 26 Am. Jur. 2d 569, Embezzlement, § 18; see *Commonwealth* v. *Shepard,* 83 Mass. (1 Allen) 575, 586; *State* v. *Colson,* 325 Mo. 510, 516, 30 S.W.2d 59; *Territory* v. *Hale,* 13 N.M. 181, 189, 81 P. 583. "Embezzlement convictions for drawing checks payable to the accused's own creditor [or to third persons] against the principal's or employer's bank account have been upheld in a majority of cases, notwithstanding the question of the accused's possession of the embezzled funds." Note, 88 A.L.R.2d 688, 689; see *People* v. *Schmidt,* 147 Cal. App. 2d 222, 229, 305 P.2d 215; *State* v. *Lockie,* 43 Idaho 580, 587, 253 P. 618; *State* v. *Johnson,* 109 Kan. 239, 241, 199 P. 104; *State* v. *Bussa,* 176 La. 87, 101, 145 So. 276; *Simmons* v. *State,* 165 Miss. 732, 743, 141 So. 288; *State* v. *Lomax,* 322 Mo. 86, 92, 14 S.W.2d 436; *State* v. *Krug,* 12 Wash. 288, 308, 41 P. 126.

The trial court was correct in concluding that upon all the evidence the defendant was guilty of the crime charged beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.