STATE OF CONNECTICUT *vs.* C. E. MacCULLOUGH.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 11th—decided July 12th, 1932.

*Samuel Campner,* with whom, on the brief, was *Everett B. Morris,* for the appellant (the accused).

*Samuel E. Hoyt,* State's Attorney, with whom, on the brief, were *Abraham S. Ullman,* Assistant State's Attorney, and *Irving Sweedler,* for the appellee (the State).

BANKS, J. The first count of the information, with which alone we are here concerned, alleged that the accused took into his possession, as agent of Mary D. Myers, two hundred and twenty-four shares of the stock of The General Electric Company and unlawfully appropriated it to his own use, with the felonious intent to defraud her of it, thus charging the commission of the statutory crime of embezzlement. General Statutes (Rev. 1918) § 6517, now § 6365, Revision 1930.

Numerous assignments of error are predicated upon the denial of requested changes in the finding, upon the overruling of the claims of law made by the accused, upon certain rulings on evidence and upon the conclusion reached by the trial court that the accused was guilty as charged. The latter assignment raises the ultimate question of whether upon all the evidence the trial court was justified in finding the accused guilty beyond a reasonable doubt, and makes unnecessary a detailed consideration of the claims for correction in the finding, since the rights of the accused are fully protected by the comprehensive inquiry as to whether upon all of the evidence the accused could be found guilty beyond a reasonable doubt. *State* v. *Frost,* 105 Conn. 326, 332, 135 Atl. 446; *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 Atl. 761; *State* v. *Schofield,* 114 Conn. 456, 459, 159 Atl. 285.

The essential subordinate facts found by the court

were either undisputed or fully supported by the oral and documentary evidence. The accused was the owner of all the common stock, except a nominal number of qualifying shares, in a corporation known as C. E. MacCullough & Co., Inc., which was engaged in a general stock brokerage business in New Haven. Prior to February 15th, 1930, the bank commissioner had made an examination of the books of the corporation, had found a deficit of $78,000 in its surplus, and had informed the accused that it would be necessary to increase the assets of the corporation immediately by the sum of $30,000 in cash. On or about February 15th, 1930, the accused visited Mrs. Myers at her home in Bristol and talked with her about the purchase of North American Trust shares. Mrs. Myers informed him that she owned two hundred and twenty-four shares of General Electric stock, the market value of which was then about $72 a share. He thereupon agreed that if she would deliver to him this stock, endorsed in blank, he, acting in his individual capacity, would pledge it at his bank as collateral security for a loan, and with the money thus obtained would buy two thousand North American Trust shares at $10 a share; that he would immediately deliver to her one thousand shares and hold the other one thousand shares until the market price of her General Electric stock reached $90 a share, when he would sell it at that price, deliver to her the other one thousand shares of North American Trust stock, and adjust with her any balance due on the transaction. Mrs. Myers, on the following day, delivered her General Electric stock, endorsed in blank, to a local representative of the MacCullough corporation and received from him a receipt for the same containing an entry of the price, ninety, at which the stock was to be sold, and the words "G. T. C.," meaning "good until cancelled;"

all in accordance with the agreement made with the accused. On February 19th, 1930, these certificates were delivered at the office of the MacCullough corporation, and on the same day, at the direction of the accused, the stock was sold in the market for $16,664.94. On February 21st an entry was made on the cash receipt book of the corporation at the directtion of the accused, as follows: "C. E. MacCullough donated surplus $16,664.94," and on the same day there appeared upon the check record book of the corporation an item "Deposit by C. E. M., draft $16,664.94," both of which entries represented the proceeds of the sale of the General Electric stock made at the direction of the accused. On the same day there was entered upon the cash receipt book an item "C. E. MacCullough, Cr. donated surplus $14,000," which, with the $16,664.94 received from the sale of the General Electric stock, made up the $30,000 required by the bank commissioner to be added to the assets of the corporation. The customers' ledger of the corporation contained an account in the name of Roy D. Myers, the husband of Mary D. Myers, which purported to include the transactions of the corporation with relation to the two hundred and twenty-four shares of General Electric stock. It contained no entry of the sale of this stock made on February 19th, 1930, and no entry of any transaction in this stock except, under date of January 6th, 1931, an entry of a sale of two hundred and twenty-four shares of General Electric stock at 45¾, the proceeds of which, less a commission of $33.60 and tax of $8.96, were credited to the account of Roy D. Myers in the sum of $10,205.44. On that day, January 6th, 1931, Mrs. Myers and her husband had called at the office of the accused and were told by him that General Electric stock had declined to about $45 a share, and

he advised Mrs. Myers to make some settlement of her account, to which she, being ignorant of the true situation, agreed. The accused thereupon pretended to make a sale of the General Electric stock at 45¾, and had prepared a statement of her account showing that she was entitled to $1192, which amount she was paid by a check of the corporation. In this accounting she was given credit for dividends supposed to have accrued on two thousand North American Trust shares and on two hundred and twenty-four shares of General Electric stock, and was charged with $1000 loaned her by the accused, and with five hundred North American Trust shares which had been previously delivered to her. This statement did not reflect the true status of her account, since the General Electric stock had been sold by the accused on February 19th, 1930, for $16,664.94, whereas in the statement she was credited with a sale of the stock for $10,248. Upon these facts, which the evidence clearly established, the court reached the conclusion that the accused received the General Electric stock as the agent of Mrs. Myers, and that he appropriated it to his own use with the felonious intent to defraud her.

The accused contends that Mrs. Myers' dealings were not with him, as an individual, but with the corporation, that there was no actual "donation" of the proceeds of the sale of the General Electric stock by him to the corporation, but that the entry to that effect upon its books was made for the purpose of deceiving the bank commissioner, that the stock was received as collateral for the purchase of North American Trust shares, and was held, either by himself or the corporation, not as agent but as pledgee, and that the sale made on February 19th, 1930, was a "short" sale which the pledgee had a right to make, and which did not involve any intent to defraud Mrs. Myers.

Both Mrs. Myers and her husband testified that this transaction was one with the accused personally, and their evidence was strongly corroborated by the entries upon the cash receipt book and the check record book, and the significant absence of any entry of the transaction upon the customers' ledger prior to the entry of the fictitious sale of January 6th, 1931. The oral and documentary evidence amply support the finding that the accused donated the proceeds of the sale of Mrs. Myers' stock to the assets of the corporation in order to meet the requirements of the bank commissioner. The sale of the General Electric stock made on February 19th, 1930, was obviously not a "short sale," but a sale of the specific stock represented by the certificate received from Mrs. Myers and then in the possession of the accused.

The accused contends that the delivery to him of the General Electric stock with the understanding that he was immediately to purchase for Mrs. Myers two thousand North American Trust shares, one thousand of which were to be delivered to her and the remainder retained by him until he could sell the General Electric stock at ninety, established the relationship between them of pledgor and pledgee, and that he held the stock as collateral for the purchase price of the North American Trust shares. There would be force in this contention if that were a correct statement of the transaction. But the evidence supports the finding of the trial court that the stock was delivered to him with the understanding and agreement that he was to pledge it at his bank as collateral security for a loan with the proceeds of which the North American Trust shares were to be purchased. It was turned over to him for the purpose of procuring such a loan from the bank. In procuring the loan, if he had done so, he would have been acting as the agent

of Mrs. Myers, the owner of the stock. Instead of doing so, he forthwith sold it, in violation of his agreement, and appropriated the proceeds by donating them to the assets of his failing corporation. The fact that he intended, and might be able, to replace the stock entrusted to him with other stock of the same corporation would not absolve him from guilt; when he sold the stock, he placed it beyond his power to restore the stock to her, and not only did this constitute an unlawful appropriation of it, but it also established his felonious intent to deprive her of it. *State* v. *Parker*, 114 Conn. 354, 365, 158 Atl. 797. The evidence, as well as the finding, supports the conclusion of the trial court that the accused received the General Electric stock as agent of Mrs. Myers and appropriated it to his own use with the felonious intent to defraud her.

The accused offered evidence as to the daily bank balances of the corporation between February 10th, 1930, and January 1st, 1931, also evidence as to the ability of the corporation to borrow additional capital from the bank during that period, claiming that the financial condition of the corporation was relevant in determining the intent of the accused, which evidence the court excluded. If the condition of the corporation be deemed relevant upon the question of the felonious intent of the accused, it would be so only because of its tendency to prove an intent on his part eventually to account to Mrs. Myers for the disposition of her stock in accordance with the terms upon which it was entrusted to him. Such an intention would not absolve him of guilt for the unlawful appropriation of the property entrusted to him. *State* v. *Parker, supra*. The other rulings on evidence to which exception was taken were either clearly right,

or of such slight importance as not to constitute reversible error.

There is no error.

In this opinion the other judges concurred.