STATE OF CONNECTICUT *v.* GABRIEL SERKAU.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 7—decided June 26, 1941.

*Max Spelke,* with whom were *Frank Rich* and, on the brief, *Joseph P. Zone,* for the appellant (defendant).

*Lorin Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (the state).

JENNINGS, J.   The assignment that the court erred in finding the defendant guilty of the crime charged upon all of the evidence makes it unnecessary to consider the detailed changes requested in the finding. *State* v. *MacCullough,* 115 Conn. 306, 307, 161 Atl. 512.   The basic questions raised are whether the court had jurisdiction and whether, on all the evidence, the accused was guilty as charged.   The court could reasonably have found the following facts:   Mrs. Maud P. Cahill was a widow about sixty-five years of age, without business experience, and lived alone in Stamford.   She owned American Telephone & Telegraph Company bonds of the par value of $5000 and mortgages and notes of the face value of $18,100, all of which she kept in a safety deposit box at her bank. The defendant and his wife lived near her.   An acquaintance starting in December, 1938, ripened into friendship and these people frequently visited and dined at each other's houses.   In the fall of 1939, Mrs. Cahill started discussing her investments with the Serkaus.   The defendant told her of the money he was making and his interest in the platinum business and other enterprises in New York and Canada.   He also told her that he was a lawyer.   He expressed disapproval of her investments and said he would like to

look over her mortgages and that if she would put her trust in him, he would try to improve her financial situation.

In pursuance of this understanding, the defendant drove Mrs. Cahill to her bank on December 16, 1939. While he waited in the lobby, she got her securities from the vault and brought them to him. He looked them over, returned two mortgages, gave her a receipt for the rest and told her he would hold them and investigate them for her. Two days later he sold the bonds for $5474.30 and with this as an initial deposit, opened an account in his own name in the Chemical Bank and Trust Company in New York City. Within the next three weeks he checked out practically this entire amount. On December 19, 1939, he started trying to sell the mortgages. On January 8, 1940, the defendant brought attorney George Wise of Stamford and the latter's secretary to Mrs. Cahill's home. Wise had prepared assignments of mortgage and estoppel certificates. The defendant told her that it was necessary that she sign these papers so that he, the defendant, could dispose of her mortgages and that he would invest the proceeds in his business. Wise explained that the effect of the documents was to transfer the mortgages to the defendant. Mrs. Cahill signed the documents relying on these assurances. Shortly after this transaction the defendant sold three of the mortgages to Wise for an aggregate sum of $8700. This amount was deposited in the same New York account and used by him within a short time. While a substantial part of the sums thus realized by the defendant were withdrawn by checks payable to a corporation apparently controlled by him, the court was justified in finding that these payments were for his personal use in the absence of any explanation offered by him.

On January 2, 1940, the defendant gave Mrs. Cahill a note for $23,500 payable two years after date with 6 per cent interest and asked her to destroy the receipt he had given her. She did destroy it soon afterwards. The defendant promised Mrs. Cahill 6 per cent interest and a $50 bonus on the first of each month and told her he was going to invest the money in his business. This bonus was paid by him and accepted by her on the first of February, March and April. No interest was ever paid by him nor were any of the proceeds of her securities invested by him on her behalf. On the contrary, they have been used by him for his own purposes. She has demanded her money or her securities but has nothing to show for them except the defendant's unsecured promissory note. On April 12, without notice, she instituted criminal and civil proceedings against the defendant. The defendant did not take the stand.

The question of jurisdiction was not raised at the trial but, by exception to the general rule, may be raised at any time. Conn. App. Proc., § 32, *Rindge* v. *Holbrook*, 111 Conn. 72, 75, 149 Atl. 231. It turns on the admitted fact that the proceeds of the bonds and mortgages were deposited in New York. For reasons which will appear, the question as to the mortgages as pertains to this point, is not discussed. The bonds were received in Stamford, sold in New York and the proceeds deposited in New York and checked out by checks bearing the New York date line. The general rule is that some act of conversion must take place within the jurisdiction. L. R. A. 1918E, 744; 2 Wharton, Criminal Law (12th Ed.) § 1309. Since, however, an embezzlement may extend over a considerable time and different acts may take place in several jurisdictions, it has been held that the defendant may be tried in any place where any part of the embezzlement

was committed. Wharton, id., § 1289. The court could reasonably conclude that there was a taking in Connecticut, with intent to embezzle, in view of the fact that the defendant told Mrs. Cahill that he was taking the securities for investigation, that he sold the bonds two days later and almost immediately used the proceeds to pay his personal bills. *People* v. *Murphy,* 51 Cal. 376, 379; *People* v. *Gordon,* 133 Cal. 328, 331, 65 Pac. 746, 85 Am. S. R. 177; *State* v. *Sullivan,* 49 La. Ann. 197, 21 So. 688; 16 C. J. 189; 22 C. J. S. 283. The court had jurisdiction of the first count.

The defendant further claims that he was not proven guilty beyond a reasonable doubt because the relationship between him and Mrs. Cahill was that of debtor and creditor rather than that of principal and agent. The answer to these claims depends on the application of the definition of embezzlement to the facts of the case. The statutory definition is as follows: "Embezzlement by Agent. Any . . . agent . . . of any . . . private individual, who shall take, purloin or secrete, or in any way appropriate to his own use or to the use of others, any of the goods, moneys, choses in action or property in his care or custody as such . . . agent, . . . or any moneys received by him for the sale of such goods, choses in action or property . . . shall be . . ." punished. General Statutes, § 6365. The information charges the embezzlement of specific sums of money "the lawful property of one Maud Cahill" in each of the four counts. The first count states the amount received for the sale of the bonds and the other three the several amounts paid by Wise to the defendant for three of Mrs. Cahill's mortgages.

Four essentials of the crime of embezzlement by an agent are listed in *State* v. *Henderson,* 102 Conn. 658, 660, 129 Atl. 724. They are (1) an agency, (2) the re-

ceipt of the securities as agent, bailee or trustee, (3) the conversion by the defendant to his own use, (4) the felonious intent to defraud. The distinctions made between the similar crimes of theft, embezzlement and obtaining money under false pretenses have been criticized (98 Am. Dec. 127, note; *State* v. *Gross,* 91 Ohio St. 161, 165, 110 N. E. 466) but the essential elements peculiar to each must be shown to sustain a conviction of the crime charged. One distinction between embezzlement on the one hand and obtaining money under false pretenses on the other, which the defendant claims is the only offense which could be found proven, is that in the former case the defendant does not have title to the property, while in the latter he has. 25 Am. S. R., note, 378, 391; *Commonwealth* v. *Barry,* 124 Mass. 325, 327; and see *State* v. *Rapsey,* 115 Conn. 540, 545, 162 Atl. 262; *State* v. *Henderson,* supra, 659; *State* v. *Curtin,* 5 Boyce (Del.) 518, 521, 95 Atl. 232. Applying this rule to the facts of this case, it is at once apparent that the transactions with reference to the mortgages described in the second, third and fourth counts, however reprehensible, were not embezzlement by agent under General Statutes, § 6365, because the title to them was intentionally transferred to the defendant and they were his at the time they were sold. It follows that there was error in convicting the defendant of embezzlement on these counts. The evidence indicates that the defendant might have been guilty of embezzlement by a fiduciary under General Statutes, § 6364, as trustee of an express trust. Since neither the information nor the conclusions of the trial court indicate under which section judgment was rendered and since both parties apparently assumed that the provisions of General Statutes, § 6365, only were involved, we do not feel that this question is fairly before us on this record.

The bonds are in a different category. The defendant never had title to them because they were merely intrusted to him for investigation. As soon as he got possession, they were sold and the money used for the defendant's own purposes. As far as the element of title is concerned, the defendant's act is within the definition of embezzlement. The jurisdictional question has been discussed and decided adversely to the defendant.

The defendant did not take the stand or offer any evidence or explanation of his conduct. His attorneys have wisely refrained from any eulogies and only suggest that, while their client may have been guilty of various other crimes, he has not been brought within the technical definition of embezzlement. His further claims should therefore be examined in the light of his failure to testify. *State* v. *Hayes,* 127 Conn. 543, 590, 18 Atl. (2d) 895. He principally stresses two. He first claims that the evidence discloses a relationship of debtor and creditor rather than of principal and agent, or, at least, that the former is as reasonable a hypothesis as the latter. This was a question of fact. See *State* v. *MacCullough,* supra, 311; *State* v. *Rapsey,* supra. The giving of the note under the circumstances disclosed is insufficient to overcome the other evidence and reasonable inferences to be drawn therefrom. *People* v. *Crane,* 34 Cal. App. 599, 611, 168 Pac. 377.

The defendant claims that the evidence shows that bonds, choses in action, were embezzled rather than money as charged in the information. He claims that this is a fatal variance. When the defendant sold the bonds and received money for them, he continued to hold that money for the benefit of Mrs. Cahill. Restatement, Restitution, 820. When he converted the money, he was guilty of embezzling it. *The Queen* v.

*Gale,* L. R. 2 Q. B. 1876, 141. All the elements of the definition quoted from the *Henderson* case were present. The conclusion of the trial court that the defendant was guilty of the offense charged in the first count must stand.

There is no error as to the first count in the information and the judgment as to that count is affirmed. There is error as to the second, third and fourth counts; and as to them the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.