## State of Connecticut *v*. Richard Seiden

Appellate Division of the Circuit Court

File No. CR 5-13588

Argued June 2—decided August 22, 1969

*John J. Coughlin,* of Milford, for the appellant (defendant).

*Joseph H. Sylvester,* assistant prosecuting attorney, for the appellee (state).

Kosicki, J. There was substantial, although conflicting evidence, on which the court could find the following facts. On September 22, 1968, Officer Daziel of the Milford police department was checking buildings at two o'clock in the morning, in the performance of his duties. He heard loud screams, yelling, and profanity emanating from a residence a block away and immediately drove to the place. On his way there, he radioed police headquarters for assistance and, in response, Officer Stygles arrived

there to help him. The residence in question consisted of two separate apartments, one on the left and one on the right as a person approached the property. Officer Daziel observed that the noises described were coming from the apartment to the left, which was opposite to the defendant's, with the front entries opening on a screened porch common to both apartments. As Officer Daziel got out of his motor vehicle and proceeded up the porch steps, he was confronted by some person and informed that there would be no further disturbance in the apartment to the left, occupied by Kathleen Danz. At the same time, the door of the apartment of the defendant was opened by him in response to a knock from one Baranowski, who was seeking admittance, and the defendant in his protest uttered a four-letter profane word. He did, however, let his friend in and closed the door. Thereupon, Officer Daziel, without knocking or making any indication by word or otherwise that he was a police officer and was seeking entry for the purpose of making an arrest, opened the door and entered the apartment. Thereupon, a scuffle ensued between the defendant, aided by Baranowski, and Officer Daziel, during which the defendant maintained that he had violated no law and if there had been any disturbance it occurred in the apartment opposite his. The officer, after subduing the defendant, placed him under arrest and handcuffed him. During the scuffle and while being placed in the cruiser by Officers Daziel and Stygles, the defendant struggled and resisted. He used profane language and hurled obscenities at Officer Daziel. He exhibited a high degree of indignation and anger at being arrested and forcibly taken to the Milford police station. Upon entering the police station, while still handcuffed, and in the presence of Sergeant Pankowitz, the desk sergeant, and Officers Daziel, Stygles and Coakley, the defendant acted like

a "wild man," hurling epithets, vile invectives, profanities and obscenities at the officers. He threatened Officer Daziel with the loss of his job and persisted in demanding the reason for his arrest.

Upon trial, the defendant was found not guilty on the two counts of breach of the peace and resisting arrest at 18 Merwin Avenue. He was found guilty of breach of the peace committed at the police station. The court concluded that this offense was unrelated to the other two charges and that the defendant had committed a separate offense by reason of his actions, conduct and language at the police headquarters in Milford. From the judgment on the third count the defendant has appealed. In his assignment of errors, he has included numerous claims based upon the court's failure to correct the finding, except in a few particulars, in accordance with his motion to correct. He also assigned error in the ultimate conclusion of the court that upon all the evidence the defendant was guilty of the crime charged beyond a reasonable doubt. This last assignment makes unnecessary a detailed consideration of the claims of error directed against the finding. *State* v. *Serkau,* 128 Conn. 153, 154. Such a general assignment is determined by an examination of the evidence and not by a finding of facts. Practice Book § 995; *State* v. *Salvaggio,* 152 Conn. 716, 717. "We have given consideration to the finding, however, for the purpose of showing the specific facts found by the court upon conflicting evidence. *State* v. *Dziob,* 133 Conn. 167, 168 . . . ." *State* v. *Foord,* 142 Conn. 285, 287.

We have examined the evidence and are of the opinion that there is no substantial dispute as to the facts found by the court, nor would any correction of the finding be of any assistance to the decision we have arrived at, as a matter of law, on the basis of the facts found.

The court correctly found the defendant not guilty of the first two charges. "[A]n accused person may resist an unlawful arrest and is not bound to submit to an illegal arrest. *State* v. *Engle,* 115 Conn. 638, 648 . . . ; *State* v. *Scheele,* 57 Conn. 307, 320 . . . ; 5 Am. Jur. 2d, Arrest, § 94." *State* v. *Amara,* 152 Conn. 296, 299.

The facts in the present case, as they pertain to the situation preceding the unlawful entry and illegal arrest, approximated those in *State* v. *Elliott,* 153 Conn. 147. In that case, police officers, acting upon a complaint, approached the defendant's house for the purpose of investigating a disturbance. While doing so they could hear swearing, screaming, loud profane words and the loud noise of a jukebox coming from inside. When the defendant opened the door, they heard more of the same. They had no search or arrest warrant. Our Supreme Court held (p. 153): "Under these circumstances the officers had probable cause to believe that the crime of keeping a disorderly house was being committed before them and to arrest the defendant as the owner and occupant for that offense without a warrant." The court also held that if the officers had probable cause to believe that such a crime was being or had just been committed, "then they were authorized to make an arrest for that offense without a warrant and, as incidental to that arrest, to enter the house to make a search." Id., 152. Had Officer Daziel entered the Danz apartment for the purpose of subduing the disturbance, which happened in his presence, he would have had probable cause to do so, and no warrant would have been needed to justify his entry. He had no authority to enter the defendant's apartment and to arrest the defendant, as the trial court correctly concluded.

The remaining question is whether the occurrence at the police headquarters was a disconnected and

separate event or whether it was part of one and the same transaction which began with the illegal entry and arrest of the defendant at his apartment. The trial court concluded that while the defendant's arrest was illegal and he had the right to resist, nevertheless, on his arrival at the police station he had recovered his composure, and therefore his protests at the police station became intemperate and a fresh offense was committed by him for which he was convicted. We cannot agree with this reasoning, which appears to be inconsistent with the judgment rendered for the defendant on the first two counts.

In *State* v. *Licari,* 132 Conn. 220, where the defendant was twice presented for a motor vehicle offense arising out of one continuous journey, because the travel included two contiguous towns, it was held, in effect, that the defendant would be exposed to double jeopardy if prosecuted twice for the same continuing offense. Although the question of double jeopardy was not pressed in the instant case, because all counts were contained in the same information and prosecuted at the same trial, the point of law as to continuity of all charges, making them all one offense, must be considered by us, in justice to the claims of the defendant. The following quotation from the *Licari* case at page 223 is apt: "In *Blockburger* v. *United States,* 284 U.S. 299, 302, . . . two statements from 1 Wharton, Criminal Law (11th Ed.), § 34, and the note thereto, are incorporated as follows: '. . . when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.' . . . 'The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately

. . . . If the latter, there can be but one penalty.' In *United States* v. *Midstate Co.*, 306 U.S. 161, 166, . . . a definition given in the opinion of the Circuit Court of Appeals in the same case is approved: 'A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy.' " See, e.g., *State* v. *Palkimas*, 153 Conn. 555, 561; *State* v. *Benson*, 153 Conn. 209, 218.

As we have already stated, the undisputed facts show that after his illegal arrest the defendant continued to struggle and protest even after his arrival at the police headquarters. He was highly indignant at being deprived of his liberty. All of this time he was manacled. We do not condone the language that may have been used. But the right to seek his freedom was his, as clearly appears from the facts. *State* v. *Amara*, supra.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion DEARINGTON and KINMONTH, Js., concurred.