STATE OF CONNECTICUT *v.* RALPH JUDKINS

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 14-125371

Argued January 10—decided April 14, 1972

*Rodney R. Jones,* of West Hartford, for the appellant (defendant).

*Allen W. Smith,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant was charged in three counts with the crimes of interfering with a police officer, assault on a police officer, and resisting a police officer, in violation of § 53-165 of the General Statutes. On a trial to the jury, the defendant was found not guilty on the first and second counts and guilty of resisting a police officer as charged in the third count. He has appealed from the judgment rendered on the guilty verdict. Three assignments of error have been pursued on the appeal: (1) denial of the defendant's motion for a directed verdict; (2) instructions to the jury on the weighing of the credibility of the defendant; and (3) instructions to the jury on the defendant's constructive knowledge that

police officers were present. Other assignments of error, not pursued in the brief, are treated as having been abandoned. *French* v. *Oberreuter*, 157 Conn. 181, 184; Maltbie, Conn. App. Proc. § 167.

After the state and the defense rested, the defendant moved for a directed verdict on the ground that the facts presented were insufficient as a matter of law to convict and that the conviction went against the weight of the evidence. The court denied the motion. "[T]he court may direct a verdict of not guilty in a criminal case when the reasoning mind could not reasonably reach a conclusion other than that the evidence, under the law, is not sufficient to justify a finding of guilty beyond a reasonable doubt. The trial court should not direct a verdict of not guilty unless the judge is clearly of the opinion, upon the best consideration and judgment he can give the matter, that under the law the evidence compels such a direction." *State* v. *Torello*, 100 Conn. 637, 643; see General Statutes § 54-89. "This power should, however, be carefully used." Maltbie, op. cit. § 203, p. 252. The correctness of the court's ruling on the motion must be tested by the evidence set forth in the certified transcript. Practice Book § 960.

From the evidence before them, the jury could reasonably have found the following facts beyond a reasonable doubt. The defendant, accompanied by his wife, was attending a rock and roll concert at the Loft, a music coffeehouse located at 419 Farmington Avenue in the city of Hartford, on the evening of February 7, 1971. The Loft is located on the second floor and is reached by a staircase ascending from the ground floor. At around 11 p.m., three members of the Hartford police, Detective Edward Cody, Officer Martin Haley and Officer Little, arrived in civilian clothes and informed the owner, Michael Sussman, that the Loft was overcrowded and thereupon

arrested him for violating a city ordinance. The ordinance permitted an attendance in the Loft of 72 people, and it was claimed that over 150 were in attendance. The owner was instructed to go into the hall where a band was playing, stop the music, and advise the people that the hall was closed and that they must leave. Sussman complied by going to the bandstand, stopping the music, and announcing over the loudspeaker system that the police were there, the place must be closed because of regulations, and the people must leave. The defendant approached Cody and inquired why the place was being closed, and Cody replied that it was because a city ordinance on overcrowding was being violated. The defendant left and entered another room. In the meantime people were leaving through each of two doors leading out of the two rooms occupied by the Loft. The defendant returned to Cody and said, "You lousy cops, you're always spoiling people's good times. You're using the law to oppress people." Cody replied, "Go ahead, just leave, you're blocking the door." The defendant replied, "I don't have to leave if I don't want to." The officer thereupon arrested the defendant, who said, "You can't arrest me," and grabbed Cody with both hands, pulling him in such a way as to move both of them toward the stairway. Officer Haley was at the top of the stairway and grabbed Cody to prevent him from tumbling down the stairs. Cody, Haley and the defendant then proceeded down the stairs, with the defendant struggling, until they reached the ground floor, where handcuffs were placed on the defendant. During the struggle on the stairs Cody received lacerations on his right arm and injuries to the muscle tendons near the elbow. He was treated at the Hartford Hospital and the Hartford Health Clinic and remained away from work for two and one-half weeks.

The defendant claims that there was an insufficiency of evidence to convict him and that the court erred in denying his motion for a directed verdict. He argues that there was no evidence of resistance, without which there could be no conviction. Section 53-165 provides: "Any person who obstructs, resists, hinders, endangers or interferes with any police officer . . . in the performance of his duties shall be subject to the penalties provided in section 53-16." The defendant cites *State* v. *Neubauer*, 2 Conn. Cir. Ct. 169, *State* v. *Harris*, 4 Conn. Cir. Ct. 534, and *State* v. *Seiden*, 6 Conn. Cir. Ct. 42, to the effect that there must be a showing of hindrance or interference with an officer while he is engaged in the performance of his duties. The defendant contends that his actions could only be construed as an attempt to maintain' his balance. The evidence indicated that Cody was trying to clear the hall and that the defendant was blocking the door. Not only was the defendant blocking the door but his remarks to the officer tended to show his bellicose attitude. There was evidence that he physically grabbed the officer with each hand and pulled him in the direction of the stairs, causing each to stumble. The violence of the struggle is indicated by the injuries Cody received as they went down the stairs. No issue is raised that the room was overcrowded and a city ordinance was being violated. The officers were in the process of enforcing the ordinance, and the evidence indicates that the defendant forcibly resisted their efforts. " '[T]o resist' an officer is to oppose him by direct, active, and more or less forcible means . . . ." 58 Am. Jur. 2d 871, Obstructing Justice, § 24. Ballentine, Law Dictionary (2d Ed.), defines resisting an officer as "[t]he active and direct use of force in preventing or attempting to prevent an officer . . . from lawfully discharging his duties." The evidence, if the jury accepted it, as they were privileged to do, would be

sufficient to warrant a finding of guilty beyond a reasonable doubt, and the court was justified in denying the defendant's motion for a directed verdict.

The defendant further claims, under his first assignment of error, that the "conviction went against the weight of the evidence." It is a function of the jury to weigh the evidence, not this court. *State* v. *Smith,* 149 Conn. 487, 489; *State* v. *Lougiotis,* 130 Conn. 372, 375. The question of credibility of the witnesses was, of course, for the jury to determine. *State* v. *White,* 155 Conn. 122, 123.

The next assignment of error relates to the court's instructions wherein the court charged as follows: "You [jury] will consider the importance to him [defendant] of the outcome of the trial and his motive, if any, for telling the truth or not telling the truth." This instruction immediately preceded the following instruction: "In weighing the testimony he [defendant] has given, you should apply the same principles by which the testimony of every witness is tested and that necessarily involves the consideration of his interest in the outcome of this particular trial." Immediately following the instruction in question, the court continued: "An accused person having taken the witness stand, stands before you just like any other person and is entitled to the same consideration. He must have his testimony measured in the same way as any other witness, including, however, his interest in the verdict you are to render." The defendant has cited a number of cases from other jurisdictions in which he claims such instructions have been held erroneous, such as *People* v. *Boren,* 139 Cal. 210; *State* v. *Rogers,* 30 Idaho 259; *State* v. *Bester,* 167 N.W.2d 705 (Iowa); and *State* v. *Finkelstein,* 269 Mo. 612. The defendant cites no Connecticut case to support his contention but argues that the rule in *Griffin* v. *California,* 380 U.S. 609, should

be so construed as to render the instruction prejudicial to him. In *Griffin* the Supreme Court of the United States held that adverse comment by a prosecutor or a trial judge on a defendant's failure to testify in a state criminal trial violated the federal privilege against compulsory self-incrimination because such comment "cuts down on the privilege by making its assertion costly." Id., 614; see *State v. Annunziato,* 154 Conn. 41, 43. The rule in *Griffin* does not apply here.

In *State v. Schleifer,* 102 Conn. 708, 725, the court charged, in relation to the testimony of the accused, ". . . above all, you are to take into consideration that he is the accused in this case and his great interest in the result of the same," and this charge was held to be correct. In *State v. Palko,* 122 Conn. 529, the trial court commented on the jury's right to consider the motive, if any, of any witness for testifying as he did, and stated that such fact should be taken into consideration in weighing the testimony of the witness as it related to reliability. On appeal, the Supreme Court said (p. 534): "The jury could not have understood the whole sentence as informing them otherwise than if the jury found that any witness had a motive for testifying falsely they had a right to consider that in weighing his testimony, and the fact that the accused appearing as a witness has a vital interest in the result of the trial is not an exception to this rule." See *State v. Fiske,* 63 Conn. 388, 392. This portion of the charge was a fair statement of our law.

The defendant's final assignment of error is directed to the court's instruction relating to the first count wherein the court told the jury that they must find that the defendant had either actual or constructive knowledge that Cody was a police officer. At the close of the instructions the defendant took an exception as follows: "My next exception relates to

your definition of the first count . . . ." Since the exception related solely to the first count and since the jury returned a verdict of not guilty on this count, it becomes unnecessary to review this assignment of error. The jury found the defendant guilty on the third count, that is, resisting a police officer in the performance of his duties. No exception was taken to the instructions pertaining to this count, nor does the defendant argue in his brief that the instructions relating to the third count were incorrect.

There is no error.

In this opinion JACOBS and KINMONTH, Js., concurred.