STATE OF CONNECTICUT *v.* DAMON D. LIZZI
(11700)

PETERS, C. J., HEALEY, DANNEHY, MENT and S. FREEDMAN, Js.

Argued January 14—decision released April 22, 1986

*Robert E. Silver,* pro hac vice, with whom was *Joshua R. Kricker,* for the appellant (defendant).

*Arthur G. Aaron,* special assistant state's attorney, with whom were *Carl Schuman,* assistant state's attorney, and, on the brief, *Warren A. Gower* and *David Sullivan,* assistant state's attorneys, for the appellee (state).

DANNEHY, J. The defendant, Damon D. Lizzi, was charged with embezzlement, in violation of General

Statutes §§ 53a-119 (1), 53a-121 (b) and 53a-123. After trial by jury, the defendant was found guilty and sentenced to a term of one year with execution suspended after ninety days. On appeal the defendant contends that the trial court erred: (1) in denying his motion for judgment of acquittal at the close of the state's case; (2) in admitting evidence tending to show the defendant's commission of other crimes; (3) in failing to recharge the jury in accordance with the defendant's request; and (4) in overruling the defendant's objection to allegedly improper remarks by the prosecutor during closing argument. The defendant also claims that he was denied effective assistance of counsel at trial. The record discloses no error.

I

We first address the defendant's claim that the trial court erred in denying his motion for judgment of acquittal filed at the close of the state's case-in-chief. After the motion was denied, the defendant proceeded to present evidence in his defense, and, at the close of all the evidence again moved for judgment of acquittal. He moved for acquittal a third time after the jury had returned a verdict of guilty. On appeal, the defendant claims error only in the denial of the motion for judgment of acquittal after the close of the state's case-in-chief.

Under our waiver rule, a defendant may not appeal the denial of a motion for judgment of acquittal brought at the close of the state's case-in-chief when he elects thereafter to introduce evidence in his own behalf. The reason for this rule is that the defendant, by presenting his own witnesses, may fill gaps, if any, in the evidence left by the state at the conclusion of its case-in-chief. We have recently questioned the constitutional validity of the waiver rule. *State* v. *Rutan,* 194 Conn. 438,

440–44, 479 A.2d 1209 (1984); *State* v. *Duhan,* 194 Conn. 347, 351–52, 481 A.2d 48 (1984). In the present case, however, we need not decide whether the denial of a motion for judgment of acquittal at the close of the state's case-in-chief is assignable as error, because we find that the evidence was sufficient at that juncture. Our review of the evidence at the close of the state's case-in-chief is limited to a determination of whether the jury " 'could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984); *State* v. *Haddad,* 189 Conn. 383, 387, 456 A.2d 316 (1983); *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978)." *State* v. *Rutan,* supra, 444.

The jury could reasonably have found the following facts. The defendant was the administrator of a nursing home in Old Saybrook. In that capacity he received monthly benefit checks under the federal social security program on behalf of the elderly patients under his care. Although the defendant was legally entitled to charge the proceeds of each check directly against the operating expenses of the nursing home, he was required to reserve a twenty-five dollar monthly allowance from each check for the personal use of the elderly recipients. Accordingly, the defendant opened a separate account, known as the patients' personal funds account, with the Essex branch of the Connecticut National Bank, against which the defendant was the only authorized drawer.

Robert Brousseau, an accountant for the state, audited the books of the nursing home. Brousseau testified that, according to the defendant's records, there was a deficit in the patients' personal funds account

for the entire period between September 30, 1975, and September 30, 1978. It was undisputed at trial that between August 24, 1976, and July 19, 1978, the defendant drew four checks against the personal funds account in the total amount of $1546.55, which he used to pay for shoes purchased by him and his family on a credit account with a local shoe store. Since the personal funds account was in deficit at all times during the period of these purchases, due to undertransfers of monies as reflected on the defendant's own books, the jury could reasonably have concluded that the four checks were drawn from funds belonging exclusively to the patients of the nursing home.

The state also offered several witnesses who testified to a fraudulent intent on the part of the defendant. The defendant, in order to balance the individual equities in the patients' personal funds account, maintained a system of patient ledger cards which served as passbooks against the account. With each monthly transfer on behalf of a patient to the personal funds account, the defendant would enter a twenty-five dollar debit on the patient's ledger card, representing an increase in that amount of the patient's share of the account. Conversely, whenever the defendant made a personal expenditure on behalf of a patient, he would enter a corresponding credit for that amount on the patient's ledger card. Deborah Mackenzie, the defendant's former wife, testified that the defendant importuned her to falsify patient ledger cards by entering fictitious expenditures on behalf of patients. The defendant admitted to Mackenzie that he knew that this was wrong, but complained that the state was not paying enough money to cover the operating costs of the nursing home. By state regulation, a patient was allowed to accumulate no more than $250 in personal funds. Any money in excess of $250 reverted automatically to the state of Connecticut. The defendant told

Mackenzie that if the patients did not spend their money, he would keep it for the nursing home. Three former bookkeepers employed at the nursing home also testified to false and irregular charges posted to patient ledger cards. The defendant concedes in his brief that the testimony of these witnesses, "if believed," was sufficient to sustain a jury finding that he engaged in a scheme to defraud nursing home patients.

General Statutes § 53a-119 (1) provides that "[a] person commits embezzlement when he wrongfully appropriates to himself . . . property of another in his care or custody." The defendant contends that the state failed to sustain its burden that the defendant appropriated property "of another" because it was unable to show that the funds contained in the patients' personal funds account, together with petty cash on hand at the nursing home, were insufficient to satisfy the obligations to the patients as reflected on their individual ledger cards. We disagree. The crime of embezzlement is consummated where, as here, the defendant, by virtue of his agency or other confidential relationship, has been entrusted with the property of another and wrongfully converts it to his own use. *State* v. *Moreno,* 156 Conn. 233, 243, 240 A.2d 871 (1968); *State* v. *Harris,* 147 Conn. 589, 592, 164 A.2d 399 (1960); *State* v. *Serkau,* 128 Conn. 153, 158, 20 A.2d 725 (1941); *State* v. *MacCullough,* 115 Conn. 306, 311–12, 161 A. 512 (1932); *State* v. *Henderson,* 102 Conn. 658, 660, 129 A. 724 (1925); *State* v. *Griswold,* 73 Conn. 95, 98, 46 A. 829 (1900); see also *State* v. *Vars,* 154 Conn. 255, 266, 224 A.2d 744 (1966); LaFave & Scott, Criminal Law (1972) § 89; 26 Am. Jur. 2d, Embezzlement § 4, p. 552. The state presented sufficient evidence during its case-in-chief to allow the jury reasonably to conclude that the defendant wrongfully appropriated to himself the money under his care which belonged to the patients of the nursing home in order to satisfy his personal obli-

gations. In light of the testimony of the defendant's former wife and his former bookkeepers, a jury might reasonably have concluded that the aggregate charges as reflected on the patients' ledger cards did not accurately state the account balance. Moreover, the testimony of Brousseau was sufficient to establish that there was always a deficit in the patients' personal funds account, due to undertransfers by the defendant, and thus, that *any* appropriations by the defendant of monies from this account were wrongful as against the patients. The trial court did not err in denying the defendant's motion for judgment of acquittal at the close of the state's case.

## II

The defendant next claims that the trial court erred in allowing the state to introduce evidence tending to show his commission of other crimes. The defendant first refers to the testimony of his former wife. As already stated, Mackenzie testified that the defendant importuned her to falsify patient ledger cards. Over the defendant's objection, the trial court admitted Mackenzie's testimony in order to prove a common scheme and design to defraud. The trial court gave an appropriate limiting instruction to the jury both during trial and in its charge.

Evidence of a defendant's bad character, as shown through his commission of other crimes, is inadmissible to show that the defendant on a particular occasion acted in conformity therewith. Such evidence is admissible, however, to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency. *State* v. *Vessichio,* 197 Conn. 644, 664, 500 A.2d 1311 (1985); *State* v. *Jacobowitz,* 194 Conn. 408, 414, 480 A.2d 557 (1984); *State* v. *Ryan,* 182 Conn.

335, 337, 438 A.2d 107 (1980); *State* v. *Hauck,* 172 Conn. 140, 143–44, 374 A.2d 150 (1976). We have held that in "a prosecution for embezzlement such as this, the range of relevant evidence is wide, especially as it bears on the essential element of an intent to defraud, which involves a state of mind and can generally be proved only by circumstantial evidence." *State* v. *Harris,* supra, 601; see also *State* v. *Carrione,* 188 Conn. 681, 692, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983); *State* v. *Tedesco,* 175 Conn. 279, 288–89, 397 A.2d 1352 (1978). The evidence of the defendant's attempt to persuade his former wife to falsify patient ledger cards, and his statements reflecting an awareness that his conduct was wrongful were highly probative of the defendant's intent to defraud. The trial court in the proper exercise of discretion could reasonably have determined that the probative force of this evidence outweighed its prejudicial effect. The trial court did not err in admitting the testimony of the defendant's former wife.

The defendant also claims error in the state's cross-examination of Albert Lizzi, the defendant's father. After Albert Lizzi had concluded his direct testimony as a witness for the defendant, the state, on cross-examination, sought to question him about larceny charges pending against him arising from the same investigation which led to the defendant's arrest and ultimate conviction. The trial court, over the defendant's objection, allowed the assistant state's attorney to ask the following question: "Now, Mr. Lizzi, don't you presently have pending against you in this particular court an information charging you with three counts of larceny in the first degree and one count of conspiracy with your son to defraud the state Medicaid program?" The trial court specifically instructed the jury during its charge that this evidence was to be considered only as relevant to Albert Lizzi's interest, bias and motive in testifying.

Albert Lizzi, because he was a codefendant in separate but related charges arising from the investigation of the same nursing home, was clearly an interested witness. At the time of the defendant's trial it was understood that the trial of Albert Lizzi would immediately follow. Albert Lizzi acknowledged his interest in the outcome of the defendant's trial which, notwithstanding his familial relationship to the defendant, arose purely from his status as a codefendant in the same criminal enterprise. After the trial court had ruled that Albert Lizzi's pending charges would be admitted into evidence, the witness stated outside the presence of the jury: "I believe that the state has succeeded now in leaving me on the stand as a prejudiced witness. If it remains this way, the decision of the jury can go against me. And this means an awful lot to me, this first part of this trial. I have to get a not guilty. I have to get it." In *State* v. *Moynahan,* 164 Conn. 560, 601–602, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973), the witness had been "arrested and charged as a coconspirator with [the defendant] stemming from the same investigation and involving the same type of criminal behavior. . . . Under such circumstances the state had the right to cross-examine him to show whatever bias, interest or prejudice he might have regarding the case. 3 Wigmore, Evidence (Chadbourn Rev., 1970) §§ 949, 967; 58 Am. Jur., Witnesses, § 755; note, 20 A.L.R. 2d 1421, 1440 § 7, 1446 § 12." The trial court did not err in allowing the state to inquire into Albert Lizzi's pending criminal charges.

## III

We next consider the defendant's claim that the trial court erred by refusing to recharge the jury in accordance with counsel's request. After the jury had commenced deliberations, it requested the trial court to reread its charge concerning the possible verdicts the

jury might return. The trial court conducted a brief colloquy with the jury foreman and determined that rather than full reinstruction on all relevant statutory definitions as contained in the body of the charge, the jury wanted only a rereading of the trial court's final summary of the possible verdicts that might be returned. After the trial court finished its recharge, defense counsel took exception to the trial court's failure to include the complete definition of the statutory intent required for conviction of embezzlement under General Statutes § 53a-119 (1).

The trial court was fully justified in rereading no more of its charge than the jury wanted to hear. The defendant was charged only with the crime of larceny by embezzlement, and the only possible distinction between verdicts the jury might return related to the value of the property embezzled. The trial court instructed the jury that if it found the defendant had drawn the four checks in question pursuant to one scheme or course of conduct, the amounts involved could be aggregated in determining the grade of the offense. General Statutes § 53a-121 (b). The court also reinstructed the jury on the essential elements of the crime of embezzlement, without elaborating on the statutory definitions of any particular element. With regard to the element of intent, the trial court twice reminded the jury that, in order to find the defendant guilty, it must find that he appropriated or disposed of patients' funds "without any legal justification and with a wrongful or dishonest intent as I have defined those terms for you." The trial court committed no error in refusing the defendant's request to reread its full charge on the element of intent.

## IV

The defendant next contends that the trial court improperly overruled his objection to references by the

prosecutor during final summation to individual patients of the nursing home whose names allegedly had not previously been introduced into evidence. In his summation the prosecutor exclaimed to the jury, "It didn't belong to him ladies and gentlemen. That money belonged to the people, those patients like John Day, Mary Linski, Joseph Wronski, Henry Greenleaf. Those are the people the money belonged to."

It would be improper for the prosecutor to comment during final summation on facts not introduced into evidence at trial. *State* v. *Ferrone,* 96 Conn. 160, 169, 113 A. 452 (1921). In the present case, however, the names of the patients referred to by the prosecutor had been introduced into evidence through their ledger cards which were admitted as full exhibits. The one exception was Mary Linski, whose correct name, Mary Lindsey, was most likely mispronounced by the prosecutor or mistranscribed by the stenographer. The trial court properly overruled the defendant's objection to the prosecutor's reference to individual victims in this case.

## V

The defendant finally claims that he was denied the effective assistance of counsel at trial. We do not find it necessary to unduly prolong this opinion by review of the various arguments advanced by the defendant. This court has recently reaffirmed that " 'a claim of ineffective assistance of counsel is more properly pursued on a petition for a new trial or on a petition for a writ of habeas corpus rather than on direct appeal.' " *State* v. *Leecan,* 198 Conn. 517, 541, 504 A.2d 480 (1986). Thus, we believe that this claim "should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." Id., 542.

There is no error.

In this opinion the other judges concurred.